## Neimcewicz *vs.* H. Gahn and others.

## J. Gahn *vs.* Neimcewicz and H. Gahn.

Where a wife unites with her husband in a mortgage of her real estate merely as a security for the payment of his debt, she is entitled to have his interest in the estate, as tenant by the curtesy, first sold and applied to the payment of the debt, in exoneration of her estate or interest in the mortgaged premises.

This equity is paramount to the claim of a judgment creditor who has only a general lien upon the husband's interest in the premises subsequent to the mortgage.

If the fact, that the wife executed the mortgage as the surety of her husband merely, does not appear upon the face of the instrument, it may be established by parol proof.

Where a wife becomes a surety for her husband, by the creation of a valid lien upon her own property or estate, she is entitled to the same equitable rights as other sureties.

Where the creditor, without the consent of the surety, makes a binding agreement with the principal debtor to extend the time of payment of the debt, the surety is discharged ; and this rule extends to those cases where the surety only pledges his property for the debt of the principal, as well as to those in which the surety becomes personally bound.

Where a surety is compelled to pay the debt of his principal, in order to save his property or to discharge his personal liability, he has an equitable right to be substituted in the place of the creditor as to all his remedies against the principal debtor and his estate.

Whether a mere extension of time, which does not injure the surety, will discharge him, or his estate, in cases where the rights and duties of the parties are not regulated by contract between them ? Quære.

If a creditor without the consent of the surety relinquishes a subsidiary security which he holds against the principal debtor or his estate, he dischages the liability of the surety pro tanto.

But if the fact of suretyship does not appear upon the face of the contract, the liability of a surety will not be discharged, either by extending indulgence to the principal debtor, or by the relinquishment of other securities, if the creditor at the time of the act complained of did not know that he stood in the situation of a surety.

October 22. THIS was an appeal from a decree of the vice chancellor of the fourth circuit. The original bill was filed to foreclose a mortgage from H. Gahn and Jane his wife to Mrs. Neimcewicz, to secure the payment of $7000 and interest; and the mortgagors, together with certain judgment creditors of H. Gahn, were made defendants. Mrs. Gahn put in a separate answer stating, among other things, that the mortgaged prem-

ises belonged to her by descent from her mother, and that she joined with her husband in the mortgage to secure a debt due from him to the complainant, and which was secured by his separate bond. That she executed the mortgage as the surety of her husband, upon his solicitation, and under a belief that he would pay the interest punctually, and would gradually reduce the amount of the principal of the debt; and that until about the time of the filing of this bill, she supposed the interest on the mortgage had been punctually paid. She further alleged, in her answer, that since the execution of the mortgage, H. Gahn had acted as the agent of Mrs. Neimcewicz in New-York, and had received for and paid over to her from time to time large sums of money, and that she had extended the time of payment of the mortgage; in the course of which dealings, the balance due from G. Gahn, as well on account of the bond and mortgage as otherwise, had varied. That on the first of April, 1825, she took from the defendant, H. Gahn, a promissory note for $8388, payable 30 days after the date thereof, with interest, for the balance then due from him exclusive of the principal of the mortgage, and that it included all the arrears of interest due on the mortgage up to the first of February, 1825. That these transactions between her husband and Mrs. Neimcewicz had taken place without the knowledge or consent of Mrs. Gahn; and that the complainant might and could with proper diligence have collected all the interest, and a part if not the whole of the principal of the mortgage from H. Gahn. She therefore insisted that the mortgagee had forfeited her claim upon the estate of this defendant, and discharged the lien she would otherwise have had thereon, both for principal and interest.

The defendant, Mrs. Gahn, also filed a cross bill against her husband, and against the complainant in the original cause, setting forth in substance the same matters contained in her answer to the original bill. In the cross bill Mrs. Gahn also alleged that $2000 of the monies included in the mortgage were for monies loaned to her husband by Mrs. Neimcewicz before his marriage; that numerous payments had been made by H. Gahn, and received by the mortgagee on account of

1832.

Neimcewicz
v.
Gahn.

the bond and mortgage ; that other payments were tendered to her by him which she declined to receive, wishing to keep the money out at interest ; and that in April, 1825, it was devised and agreed between H. Gahn, the husband, and Mrs. Neimcewicz that the payments which had been made on the bond and mortgage should be credited on other claims against him, for which she had no security, leaving the whole amount of the mortgage apparently due and unpaid.

To the cross bill Mrs. Neimcewicz put in an answer, stating that she believed, and therefore admitted, that the real estate in the cross bill mentioned, including the mortgaged premises, belonged to Mrs. Gahn at the time of her marriage. She denied that H. Gahn was indebted to her in the sum of $2000 at the time of his marriage ; but she admitted that he might have had in his hands at that time, as her agent, a small sum, not exceeding two or three hundred dollars. She also stated, that shortly after their marriage, H. Gahn and his wife came to visit her at her residence in New-Jersey, and while there, H. Gahn negotiated a loan of $2500, for which he and his wife executed a bond and mortgage upon the wife's estate. That when H. Gahn applied for the loan, he represented that his wife's property was unproductive, but was advancing in value ; for which reason they were unwilling to sell. And that by the aid of the loan, and from what he should be able to make himself, he could provide for his family without sacrificing his wife's estate. That previous to the 22d of July, 1818, H. Gahn had in his hands monies received by him as her agent, and temporarily retained by him with her tacit assent, which monies, together with the interest due on the $2500 loan, amounted to $720,75. That he then applied to her for a further loan of $4500, including the last mentioned sum, which loan was made to him, and for which, together with the amount of the first loan of $2500, the bond and mortgage now in controversy were given. That H. Gahn continued to pay the interest on the bond and mortgage until the first of November, 1820, when he ceased to pay interest, and also neglected to pay over the monies received by him as her agent ; representing from time to time that he would shortly be able to pay the sums so retained by him, and

the whole or a considerable part of the mortgage monies. That she believed all the monies so received and retained by him went to support his wife and family ; and that she would not have permitted him to retain the said monies, had she not supposed she was conferring an essential benefit on the wife as well as her husband, by preventing, by those occasional supplies, the necessity of selling the real estate of Mrs. Gahn at a disadvantage. She denied that she ever received any payment whatever on account of the principal sum due on the bond and mortgage, or any payment on account of interest thereon subsequent to November, 1820, or any sum of money which was intended to be, or could have been applied on the bond and mortgage ; or that H. Gahn had ever offered to pay any part of the mortgage. And she alleged that the whole amount of principal, with the interest thereon from the first of November, 1820, was still justly due. That there was also due to her several sums for monies retained by H. Gahn as her agent, which, with the interest on the mortgage up to the first of February, 1821, amounted to $8388, and for which amount H. Gahn gave to her, by way of memorandum, the note in the cross bill mentioned. That it was not her intention in accepting, or the intention of H. Gahn in giving such note, to relinquish or discharge the security of the bond and mortgage, for the arrears of interest included therein. She also stated that she did not know whether the monies secured by the bond and mortgage were actually received by Mrs. Gahn, or applied directly to the benefit of her property ; but that she believed they were applied to the support of her establishment, and thus relieved her real estate, and prevented the same from being sold prematurely. To the answers replications were filed, and some testimony was taken ; but the testimony did not materially alter the case as stated in the answer of Mrs. Neimcewicz to the cross bill.

The vice chancellor decided and declared, that, as the debt for which the mortgage was given was the proper debt of the husband, the wife must in equity be deemed to have executed the mortgage as the surety of her husband ; and that she was therefore entitled, in respect to her interest in the mort-

gaged premises, to all the rights and privileges of a personal surety. That by the taking of the note of the first of April, 1825, the estate of the wife was exonerated from the lien of the mortgage to the extent of the arrears of interest included in that note; but that both hers and her husband's estates in the mortgaged premises remained chargeable, with the residue of the principal and interest due on the bond and mortgage; and that the husband's interest in the premises remained also liable for the payment of the arrears of interest included in the note. That the mortgagee was entitled to a decree for the sale of so much of the estates of both the husband and wife in the premises, as would be necessary to discharge the principal and interest not included in the note; and that the husband's interest in the residue of the estate, or in the surplus monies, if the whole was sold, should be appropriated to pay the amount of interest included in the note, &c. And a reference to a master was thereupon directed, to take and state two separate accounts of the amount due upon these principles, reserving all further questions and directions.

The complainant in the original bill appealed from that part of the decree which declared that Mrs. Gahn was to be deemed, in equity, to have executed the mortgage as a surety for her husband, and that she was entitled to the rights and privileges of a surety; and from so much thereof as adjudged that her interest in the mortgaged premises was discharged to the extent of the arrears of interest included in the note; and also from so much of the decree as directed the order and manner in which the estate of the husband and wife should be sold, and the disposition of the proceeds of such sale. The following is the opinion of the vice chancellor:

Cowen, V. C. The mortgage was for a loan to Henry Gahn, the husband, of $7000; and the premises charged are the wife's estate. The mortgage is in fee, and the estate is in fee in the wife. The principal sum is admitted to be due, and so of the interest qua the husband. But the wife insists that her land, (inheritance,) was a surety for her husband, and that on the 1st April, 1825, the complainant took Gahn's

negotiable note at thirty days for all the arrears of interest up to 1st February, 1825, thus giving time to the principal, and discharging the surety pro tanto ; *ergo*, the estate is liable only for the principal, and the interest accruing after the 1st of February, 1825.

I do not see that the complainant has received any monies from Gahn which she was bound to apply in extinguishment of the mortgage debt, nor will mere delay to sue or foreclose discharge the surety, there being no fraud pretended. (9 *Wheaton*, 736, 7.) The question then is confined to the interest which accrued before the 1st of February, 1825. For this interest the wife was a surety. True, her person was not bound; but her property was—a most substantial suretyship. It is like the case of *Robinson* v. *Gee*, (1 *Ves. sen.* 251.) There the first tenant in tail borrowed money, and procured the tenant in tail in remainder to join with him in a mortgage to secure the money. The latter was holden a surety, and on the death of the principal was exonerated by his personal estate. Lord Hardwicke says, the remainder man might have got the place of the mortgagee in the principal's life time, and thus have reimbursed himself. So here, the husband could not get the money on a mortgage of his estate, *jure mariti*, and he therefore procured his wife to join, and mortgage her inheritance, which was, to all intents, her separate estate. Lord Hardwicke puts this case as a very common one, and says, that after the husband's death the wife shall be exonerated by his assets real or personal. She answers to the remainder man, in *Robinson* v. *Gee* ; her husband having the particular estate. "She is," says Lord Hardwicke, in *Paterscke* v. *Powlet*, (2 *Atk.* 383, 4,) a case precisely like this, "entitled to stand in the place of the mortgagee." That case has generally been followed. Clancy says, in his treatise on the rights of married women, (p. 589,) "Where the wife advances or charges her separate property for her husband's use, intending it as a loan and not as a gift, she will be considered as the creditor, and will be supplied with all the means of enforcing the demand against her husband's estate, which the creditor possessed. Such is the doctrine, which seems to be

without exception or qualification." In other words, she is a surety, and entitled to all a surety's rights and remedies.

Now it is conceded that if she were not Gahn's wife, if she were a stranger, she would be discharged by the note, as to the interest. We have the decision of Lord Hardwicke that she is a stranger; and, for the purposes of this suit, not the wife of Gahn. His words are, " She must be considered as a distinct person, and is equally entitled to stand in the place of the mortgagee as a stranger." (2 *Atk.* 384.) He was speaking, it is true, of an advance of money by the wife to raise an incumbrance against the estate of the husband; but the principle is the same, and he immediately puts the case of a mortgage by her, as parallel with the one under consideration. She need not wait till the husband's death; she is a present surety. The husband was not dead in the case of which he was speaking.

So in *Aguilar* v. *Aguilar*, (5 *Mad. Rep.* 414,) the wife charged her separate estate as security for an annuity granted by her husband; then he took the benefit of the insolvent debtor's act; and it was held, because she was surety, that even as against other subsequent annuitant creditors of the husband, his estate should be first applied to discharge hers; that is to say: she was allowed the same preference as the grantee of the first annuity: she came into his shoes because she was surety; and even during her husband's life. This was held by Sir John Leach, V. Ch. after two arguments. We see, then, that Mrs. Gahn is a surety; and I see no reason for distinguishing her case from that of a stranger in any respect.

The mortgagee took Gahn's negotiable note at thirty days for all the interest due February 1, 1825. This gave time for so much; it suspended the claim pro tanto for the term of the note, and so far varied the rights of the creditor. This effect of taking the note is not denied, but admitted. Then comes the well settled rule, that if a creditor, without the consent of the surety, give time to the principal debtor, by so doing he discharges the surety. (*Samuell* v. *Howarth*, 3 *Meriv.* 278.) The reason given is that the creditor has put it out of the power of the surety to consider whether he will have recourse

to his remedy against the principal or not ; and because he, in fact, cannot have the same remedy against the principal as he would have had under the original contract. (*Id.*) The case of *Rees* v. *Berrington*, (2 *Ves. jun.* 540,) is also full to every point in this case, after the relation between the husband and wife as principal and surety is once established. The reasoning at page 54 of that case gives the true ground of interference by a court of equity. That court never looks beyond the fact of suspension ; it never speculates upon the consequences to the surety, either actual or probable. (*Boultbee* v. *Stubbs*, 18 *Ves.* 20. *Bowmaker* v. *Moore*, 3 *Price*, 214.) Had it not been for this strong mark of confidence on the part of the complainant, the taking of the note, it is easy to conceive that the wife or her friends might have demanded that the mortgage debt should be immediately closed. I must, therefore, decree that the wife's inheritance is discharged from the interest up to February 1, 1825. There must be a reference to take two accounts : 1st, the whole debt and interest including the note ; 2d, the debt and interest, exclusive of the interest included in the note.

Since the execution of the mortgage, several judgments have been obtained against Gahn, which operate to incumber his interest, *jure uxoris*. The judgment creditors are made parties, and one of the defendant's points is that in respect to the charge upon her land as surety, she shall be preferred to the judgment creditors ; in other words, that she may take the place of the complainant, and have the husband's interest *jure uxoris* applied to satisfy her as surety in the mortgage. This is right, provided it be attainable in this suit. She is entitled to what is called subrogation ; i. e. to come round and be herself the mortgagee in place of the complainant. And holding that place, she, of course, takes preference to the subsequent incumbrancers. This is a familiar and perfectly well settled chancery rule ; and *Aguilar* v. *Aguilar*, (5 *Mad. Rep.* 414,) is this case precisely, only substituting judgment creditor for annuitant. There, as I before stated, the wife joined the husband in binding her separate estate, as surety for the annuity granted by her husband. This included both her separate estate and her husband's interest *jure mariti*. Then he grant-

ed subsequent annuities, charged on his estate *jure mariti*, but in which the wife did not join. He afterwards became insolvent; and it was held, on full deliberation, that she was entitled to have the husband's income, in the hands of his assignees, first applied in discharge of the annuity for which she was surety, even as between her and the subsequent incumbrancers of the husband alone.

I am asked to go farther, and apply the avails of the husband's interest *jure uxoris* exclusively to the debt decreed against the surety. But all his interest is still bound; so far as his incumbered funds are concerned, they are all saved; and the surety suffers no injury, nor possibility of injury. She comes into the complainant's place, taking all her rights as mortgagee. So far, there is no possibility of loss. Her loss was by a suspension of the mortgagee's personal remedy for the interest included in the note. Against this the wife is relieved. *Capel* v. *Butler*, (2 *Sim. & Stuart*, 457,) is relied on; but there the benefit of some of the securities, two vessels, were absolutely lost to the surety by the negligence of the creditor in not getting a proper assignment. The consequence was, that the value of the vessels, as against the surety, was deducted from the redemption money of the annuity. What was done with the remaining securities does not appear in the report.

Suppose in this case, the wife had been discharged from the whole debt. The mortgage against the husband's interest would still remain for the whole. She being discharged for only a part, *a fortiori*, the mortgage against the husband remains for the whole, and, of course, for that part of the whole from which she was discharged. Had the creditor flung away the security against the husband's land, or any part of it, she would lose so much. But the creditor has done nothing of the kind. The whole security remains. The note does not discharge the principal; it only relieves the surety from so much. In all other respects the mortgagee's rights remain. The wife is entitled to the mortgage as an indemnity, and nothing more.

But how am I to give the relief sought for in this case? The judgment creditors are not parties to this question; the

complainant's bill shows no such ground. Mrs. Gahn sets up her right in her answer, and in her cross bill ; and she does not make the judgment creditors parties. They have had no chance to take issue on the rights thus set up ; and, for aught they knew, Mrs. Gahn joined in the mortgage merely to bar a contingent claim for dower. They might show or insist on this. She should have brought them in by her cross bill, apprising them of what she claims, and given them a chance for defence. Having omitted this, if she has any remedy, it must be by a future independent bill against the complainant, her husband, and the creditors, claiming what may be left of the husband's interest after the mortgage shall be satisfied, if any thing shall remain. To secure the rights of the wife, as between these parties, the complainant must go on and sell the interest of both husband and wife, till the debt against both shall be satisfied. Then she must confine her sales, for the interest in the note, to the husband's estate *jure mariti.*

Such are my present views ; but it is not necessary to dispose of that branch of the case respecting the judgment creditors till the master's report comes in. For the present, declare that Mrs. Gahn was a surety for her husband in the mortgage, and that her interest in the mortgaged premises is an estate in fee, subject only to her husband's right therein *jure mariti* ; that the complainant having taken the note mentioned in the cross bill, for interest on the mortgage debt, up to February 1, 1825, payable at 30 days, signed by Gahn, (the principal mortgagor,) thereby discharged the surety pro tanto ; that, except for this interest, the mortgaged premises remain chargeable as originally, and liable to be sold by the complainant ; and that for the residue, she must look to the husband's estate *jure mariti* ; or, if the whole shall be sold to satisfy the principal, she must take a personal decree against the husband for the residue.

Let there be a reference to a master to take and state, 1. an account of the mortgage debt, over and above and excluding the mortgage interest included in the note ; 2. an account of that interest ; and to report both sums to the court. And let all other questions be reserved till the coming in of

the report.   As yet no final disposition is made as to the rights of the judgment creditors; though I strongly incline to the opinion that they cannot be touched in the form in which the question comes before me.

*J. Duer & B. Robinson,* for complainant.   The argument on the part of Mrs. Gahn may be reduced to the following positions : 1.  That a wife mortgaging her separate estate for the benefit of her husband, is to be regarded in equity as a surety, and as against the mortgagee is entitled to all the rights and privileges of a surety ; and 2.  That from the facts admitted or proved in this case, it appears that the complainant was guilty of such laches in the collection of the debt as would be sufficient to discharge a surety, and that the estate of the wife is consequently exonerated.   We deny both of these positions.

It is indeed established and familiar law, that a person individually bound for the debt of another may in many cases be discharged by the acts or laches of the creditor, although the debt as against the principal is still retained, but it is a discharge from a personal liability, to which these cases without an exception refer.   There is not a single case, not a solitary dictum to support the position that where a third person by a valid instrument pledges his property, real or personal, to secure the debt of another, the creditor can be deprived of the benefit of this security, by any circumstance which would not equally release the pledge, were it the property of the debtor himself.

The position we are controverting is repugnant to the very nature of a pledge ; which is always meant to accompany the debt it is meant to secure, so that their co-existence may be truly said to be one of the terms of the contract.   He who, without being personally bound, mortgages his lands for the benefit of another, by the very act consents that so far as the security is concerned, the lands shall be treated as those of the debtor himself, and that his own rights, as ultimate owner, shall be subordinate to those of the creditor.   As between him and the debtor the transaction may be a bounty, or in its consequences may create a debt; but as between him and the

1832.

Neimcewicz
v.
Gahn.

creditor, it is equivalent to a donation of the property to the debtor, to enable him to give the security required.

The true rule of law, we submit, is that which Chancellor Kent, in the opinion which accompanies the papers has so briefly and forcibly expressed : " That the pledge is attached to the debt, and lives with it as long as the debt lives." . The only qualification necessary to be added is, " unless released in fact or in law by the creditor himself." Thus qualified it is at once seen that the rule is not at all shaken by the case of *Bowers* v. *Crafts*, (18 *John.* 110,) to which the learned counsel of Mrs. Gahn have referred. That case was submitted without argument. The evidence disclosed a palpable fraud, and in their anxiety to defeat this fraud, the court, it is apprehended, passed the limits of their own peculiar jurisdiction. Every estate created by a mortgage is an estate upon a condition subsequent, and of course, by the terms of its creation, is liable to be defeated by the performance of the condition on the day appointed. It is therefore doubtless true that where payment of the mortgage debt is offered to be made at the time and place mentioned in the condition and refused, the condition is held to be substantially performed, and although the debt remain in force, the estate of the mortgagee is divested in the same manner as if payment had actually been made. This is the meaning of the authorities to which the court refer, as will be apparent on a comparison of the different sections in *Littleton*, in which the subject is considered. (*Coke Litt. Lib. 5, ch. 3 ; Estates upon Con.* § 334, 205, 335, 207, 207, *a.* 338, 209, *b.*) But if the day of payment. is suffered to elapse, without performance or offer to perform, the estate of the mortgagee is discharged of the condition, and becomes absolute in law, and a court of equity is alone competent to afford relief to the mortgagor. This is the origin and the sole origin of an equity of redemption. If it were true, as assumed by the supreme court, that by a tender and refusal, after the day of payment, at any time before sale or foreclosure, the mortgage is extinguished, the doctrine of an equity of redemption would never have been heard of. The jurisdiction

of a court of equity in permitting a redemption would never have been exercised, for it would have been absolutely useless.

The learned counsel have cited several cases, to show that in equity a wife mortgaging her estate for the debt of her husband is sometimes regarded as a surety. The doctrine of these cases is undisputed. It is fully treated of by the elementary writers. (*See Pow. on Mort. J. 755, and 764; Clancy's Hus. and Wife, p. 589;* the whole of the last chapter, where all the cases are collected.) The law which these cases establish is, that a wife mortgaging her estate for the debt of her husband is entitled in equity as against the representatives of the husband, including devisees and legatees, to be indemnified out of his real and personal assets. If the debt remain unpaid at his death, she has a right to insist that his assets be applied to the payment, and that her land be exonerated. If she has paid the debt, she has a claim as a creditor to reimbursement. The doubt appears originally to have been whether the act of the wife in thus mortgaging her estate was not to be considered as a bounty to her husband; as a gift of so much of her property as might be necessary to satisfy the debt, and consequently whether the debt ought not in all cases to be paid by her, and his assets be relieved; but the cases have at last settled down in the rational doctrine that we have stated, that the wife pledging or advancing her property for the benefit of her husband, is considered in equity as a creditor. These cases relate exclusively to the claim of the wife against the estate of the husband. It is in respect to his representatives, that the wife thus mortgaging her estate, it is said ought to be regarded in the nature of a surety; but there is no intimation that she sustains this character in respect to the mortgagee. There is an express decision that the wife has not the character and rights of a surety, not only as against the mortgagee, but even as against the general creditors of the husband; for in regard to them she is considered as having consented that the mortgage debt shall be thrown on her estate, and her claim to an indemnity out of the assets of her husband be postponed until all his other debts have been satisfied. The decision to which we refer is that of Lord Chan-

cellor Cowper, in the case of *Tate* v. *Austin*, (1 *Peer Wms.* 264.)

The counsel of Mrs. Gahn contend that the case of *Tate* v. *Austin* is overruled by the observations of Lord Hardwicke, in *Robinson* v. *Gee*, (1 *Ves. sen.* 252.) In that case the mortgage was not executed by the wife, but by a remainder-man; and the remarks of Lord Hardwicke were by the way of illustration, and not intended to express an opinion on the case before him. We cannot persuade ourselves that an obiter dictum, even of Lord Hardwicke, could have the effect of overruling, as an authority, a solemn decree of one of the most learned and judicious of his predecessors, were the observations and the case as inconsistent as the counsel suppose. But Lord Hardwicke has not contradicted, and did not mean to contradict the decision of Lord Cowper. All that Lord Hardwicke meant to say is, that when the mortgage has been satisfied out of the personal estate of the husband, the other creditors have no right to stand in the place of the mortgagee. In other words, that the mortgage being extinguished, they have no right to have it revived and enforced against the estate of the wife for their benefit. We will only add, that our explanation of the true meaning of Lord Hardwicke's remarks is sanctioned by Mr. Cox, the very judicious editor of Peer Williams, (1 *Peer Wms.* 266, *n.* 1,) and is adopted by Clancy, the author of the most recent and able work on the rights of husband and wife. (*Clancy, p.* 592.)

Again; the equity of the wife to have her estate exonerated out of the assets of her husband does not attach where the debt for which the mortgage was given was her own debt, or where the monies raised are applied to her benefit, or to the benefit of her estate; or where she in fact intended a bounty; or where, by her acts and declarations, she has waived her claim. (*Bagot* v. *Oughton*, 1 *Peer Wms.* 347. Lord Kinnont v. *Money*, cited in *Clinton* v. *Hooper*. *Lewis* v. *Nangle*, *Ambl.* 150. *Clinton* v. *Hooper*, 3 *B. & C.* 211.)

It will not be pretended that the wife would have the rights of a surety as against the mortgagee in cases where even the representatives of the husband would be entitled to treat her

1832.

Neimcewicz
v.
Gahn.

as a principal. Is the mortgagee bound to enquire into the motives of the wife, or the private agreement or understanding between her and her husband? Is he to look to the application of the monies received? An assignee of a bond with a surety has notice, from the very terms of the instrument, of the relation of the parties, and will therefore so regulate his dealings with the principal as not to discharge the surety. But the assignee of a mortgage of husband and wife, even accompanied by the bond of the husband, does not know from the instruments even to whom the lands belong; far less has he notice of the extrinsic facts upon which the relation of principal and surety in such a case depends; and a doctrine more mischievous and absurd than one which would impose upon him the necessity of making these enquiries, could hardly be devised. The truth is, the doctrine of the counsel, favorable as it may seem to the rights of the wife, would, if established and known, prove, in its consequences, peculiarly injurious to the interests of married women. A wife mortgaging her estate has her equity of redemption; her rights to the surplus; her claims for reimbursement: but let the law of the counsel prevail, and the hazard of such securities will soon be understood; and then a wife desirous to aid her husband in his necessities will be compelled, in the first instance, to vest in him the sole and absolute title, to enable him to execute such a mortgage as the creditor would alone accept.

We pass now to the second point, and insist that even on the supposition that Mrs. Gahn is to be deemed to have united in the mortgage as a surety, and is entitled to all the rights and privileges of a personal surety, her estate is not discharged from the lien of the mortgage. On this part of the case, we shall not trouble the court with many observations, feeling, as we do, an entire confidence that the novel doctrine of the suretyship of the wife will never receive a judicial sanction. In the year 1825, the plaintiff, Mrs. Neimcewicz, took from the defendant Gahn a promissory note payable thirty days after date, for a large debt not embraced in the bond and mortgage, and included in the note the arrears of interest then due on those securities. This note was not negotiated or

paid, and was therefore no payment on the bond. We admit that the note was such an alteration of the original contract by the giving of time to the debtor, as would operate in law to release a surety, and consequently if Mrs. Gahn sustains that character, her estate is pro tanto discharged. The only effect, however, of such a discharge, would be to throw the arrears of interest included in the note exclusively on the life estate of the husband, while the reversion of the wife would still remain liable for the whole of the principal and the residue of the interest. The claim, however, of Mrs. Gahn is far more extensive. We understand her counsel to contend that her estate is exonerated in toto, and that our remedy is confined to a sale of the interest of the husband.

The only possible question of a legal character that can arise upon the facts, is whether the delay to prosecute, unaccompanied by fraud, and no injury being shewn to result from it, is to be esteemed such laches of the creditor as will discharge the surety. In the case of *The United States* v. *Kirkpatrick*, (9 *Wheaton*, 720,) this docrine was very fully discussed. The opinion of the court was delivered by Mr. Justice Story ; and in the course of his observations, that eminent jurist states it to be the clear result of the authorities, that mere laches, unaccompanied with fraud, forms no discharge of the contract of a surety. It is conceded that, in ordinary cases, to put the creditor in default, and to convert his delay into a laches for which he is responsible, it is necessary that the surety should quicken his diligence and call upon him to act. But this general rule, it is contended, is not applicable to a feme covert, since, in consequence of her disabilities as such, she cannot pursue the same legal course as other sureties for the protection of her rights. In her favor, therefore, the law will presume to have been done what it prevents her from doing, and for her exoneration, consider the mere delay of the creditor to proceed against the original debtor as equivalent to an actual refusal. If a wife be a surety in respect to a mortgage, it must be the duty of this court in all cases to afford her protection as such ; and if she can file a bill by her next

friend to exonerate her estate, no reason can be given why she may not in the same manner file a bill to compel the creditor to prosecute.

To a separation in the sale of the interests of the husband and wife we seriously object. There is no precedent for such a decree. The right of sale is co-extensive with the right of foreclosure ; and to expose separately the life estate and the fee, would in all probability lead to an injurious sacrifice of the property. This mode of proceeding is not necessary for the protection of the wife ; since, if the whole estate be sold, any surplus that may arise would, we conceive, as a matter of course, be referred to the inheritance of the wife ; and the court would therefore secure it for her benefit, instead of permitting it to be applied to the claims of the judgment creditor.

*A. Floyd & C. Baldwin,* for defendant Jane Gahn. The defendant Jane Gahn is a surety, and a surety to be especially regarded. The bond is the principal debt. She is no party to it. A mortgage at law, as well as in equity, is regarded as a mere security for the money. (*Coles* v. *Coles,* 15 *John. Rep.* 319.) And if a legal tender is made of the money, though the debt remain, the mortgage is discharged. (*Bowers* v. *Crafts,* 18 *John. R.* 110.) And when a man gives a bond and mortgage for a debt of his own contracting, the mortgage is merely collateral security for the personal obligation. (*Duke of Cumberland* v. *Codrington,* 3 *John. Ch. R.* 229.) The debt in equity is considered as the principal, and the mortgage as collateral. (*Green* v. *Hart,* 1 *John. Rep.* 580.) And even if the defendant Mrs. Gahn could have been and was a party to the bond, the debt was not hers ; and in regard to her estate mortgaged, she is to be regarded as a surety. In *Partridge* v. *Powlet,* (2 *Atkyns,* 384,) Lord Hardwicke says the wife, in respect of her estate mortgaged for the husband's debt, is to be considered as a stranger. The same doctrine is held in *Tate* v. *Austin,* (2 *Vern.* 689,) *Secors* v. *Nagle,* (*Ambler,* 150,) and *Clinton* v. *Hooper,* (3 *Brown's Ch. Rep.* 201.) It would be a singular objection to urge in a court of equity, that a feme covert, because of her inability to look after her rights as an-

other surety could do, shall not have any of the rights of a
surety. In *Roper's Husb. & Wife, vol.* 1, *p.* 140, it is stated,
"that when the transaction between husband and wife is
merely to pledge her estate to raise a sum of money for him,
to answer his necessities or to pay his debts, whatever may be
the legal mode adopted to carry the purpose into execution, a
court of equity will confine its operation to the true intent of
the parties; and since the money was borrowed for the hus-
band on the wife's estate, she will be considered in the nature
of a surety, and entitled to have such estate exonerated out
of his assets." There is nothing in the circumstance of her
coverture, nor in the circumstance of a pledge to change the
relation of principal and surety, or to exclude her from the
privileges of that character. In *Bowers* v. *Crafts,* (18 *John.
Rep.* 110,) before cited, the land was mortgaged and the equi-
ty of redemption sold, and the money tendered, and the court
held the land discharged; and so far from the pledge being
held inseparable from the debt, directly the reverse was held;
and the court cite from *Bacon's Abr.* 457, *tit. Tender, F.* that
"if A. borrow £100, and mortgage land to B. with a condition
for the payment thereof, then if A. tender the money and B.
refuse it, the land is discharged; but the debt remains, and
may be recovered." And the court notice the more equitable
light in which the rights of mortgagor and mortgagee are
considered, and cite from *Powell on Mortgages,* 170, "that a
mortgage, until foreclosure, is now considered as a personal
engagement only for securing the debt." The case has also
another material bearing upon the one before us; for the pur-
chaser of the land was, in respect of the land, a surety for the
payment of the money for which it had been mortgaged be-
fore his purchase. Our courts have gone far beyond the Eng-
lish courts in confining the contract of a mortgage to its true
intent, and discarding the constructive rights of a mortgagor,
founded upon the forfeiture of the legal estate. In *Bridges*
v. *Cabarty,* (1 *Hopkins,* 234,) the chancellor says that "the
idea that a mortgagee may avail himself of his legal estate to
obtain any advantage beyond the security of the mortgage
debt is wholly artificial, and is inconsistent with the nature of

*1832.*

Neimcewicz
v.
Gahn.

the security;" and he denies the existence of any constructive rights growing out of the technical, legal and equitable estate. It is intimated in the case of *Reason* v. *Sochemel*, (1 *Vern.* 41,) that when the wife mortgaged, she put her estate in the power of the husband ; but this is against the whole course of modern decisions, both here and in England. It was held in *Jones* v. *Jackson*, (14 *Ves.* 356,) and *Ruscomb* v. *Hare*, (6 *Dow's P. C.* 1,) that the reservation of the equity of redemption to the husband made no difference ; and in *Partridge* v. *Powlet*, before cited, Lord Hardwicke says, " She stands like a stranger ; her estate shall be looked upon only as a pledge ;" and our courts have gone far beyond the English courts in supporting the wife's estate. They have endowed her out of an equity of redemption, when the estate was mortgaged before coverture ; (*Coles* v. *Coles*, 15 *John. Rep.* 319 ;) they have endowed her out of an equity of redemption purchased by the husband, as such, against a purchaser from the husband ; (*Collins* v. *Tony*, 1 *John. Rep.* 278 ;) and they have set apart the proceeds of an equity of redemption, when she joined in the mortgage against a subsequent mortgagee of the same equity, in which she had not joined with the husband, that she might have the interest, (the full extent of her dower) though the principal could never be hers, and must eventually go to the mortgagee ; and that, too, when her right was so precarious, that if the sale had been made before the death of the husband, she could have had nothing. In the case of *Titus* v. *Neilson*, (5 *John. Ch. Rep.* 454,) the nature of the wife's contract in entering into a mortgage is fully examined. Shall the mere contingent right of dower be preserved to her, and no account be made of a clear separate estate of which nothing could divest her but her own act ? The dower is a mere contingent interest, and in mortgaging it, she might be considered, without much stretch of construction, as releasing it for the benefit of her husband. But say the court, " it is with a reservation of her rights ;" it shall be confined to the precise contract ; " and shall there be no reservation of her rights in a mortgage of her separate estate ? The court say that she can only divest herself of her dower by parting

with it in the form prescribed by the statute ;" and this is a reason why no greater latitude shall be given to her mortgage than the mortgage itself provides ; and is not this reason much stronger in the case of a separate estate ? If, then, the defendant Jane Gahn is a surety in respect to her estate mortgaged, and neither the circumstance of coverture nor the nature of her contract can change the relation, upon what principle is she to be deprived of the advantages of a surety ? She could not, it is true, so easily watch over her rights, or call upon the obligee for diligence ; but these are privileges of the surety, not obligations. (*Pain* v. *Packard,* 13 *John. Rep.* 174. *Antrobus* v. *Davidson,* 3 *Meriv.* 579. *King* v. *Baldwin,* 2 *John. Ch. R.* 554. 17 *John. R.* 384, *S. C.*) It is a privilege the surety has, to call upon the creditor for diligence, and to put him thereby in default for non-compliance, and hold him responsible for laches with which otherwise he might not be chargeable. The complainant knew of Mrs. Gahn's disability ; and it would be equitable to consider every step as taken by her which, had it not been for her disability, she might have taken, but which by her disability she was prevented from taking. In *The People* v. *Jansen,* (7 *John. R.* 332,) the defendants were heirs of the surety, and the court consider the case the stronger because they were disabled from acting. They are not chargeable with notice, say the court ; they did not know their ancestor was surety, and were not bound to examine the records and see how the responsibility stood. And accordingly they were held discharged by mere delay. But admitting Mrs. Gahn cannot have the benefit of being supposed to have done what she was disabled from doing, is she to be altogether denied the character of a surety and the protecting covering which belongs to it, because she could not do all that an ordinary surety has a right to do ; not for the non-performance of a duty, but for her inability to exercise a privilege ?

The defendant Jane-Gahn is discharged by the dealings and laches of the complainant, and particularly from the interest previous to April, 1825. It has been said that mere de-

lay would not discharge a surety. But this has often been overruled; and whenever there are circumstances rendering any movement on the part of the creditor reasonable, the surety has invariably been held to be discharged. Negligence in such a case discharges the surety in the same manner that any positive act changing the contract would. (*Pain* v. *Packard,* 13 *John. R.* 174. *Powell* v. *Waters,* 17 *Id.* 175.) In a late case (*Capel* v. *Butler,* 2 *Sim. & Stu. Ch. Rep.* 457,) there was an agreement for the grant of an annuity, to be secured by bond and surety, and by the assignment of certain property, and amongst others, of two vessels and their earnings. The grantor of the annuity executed his bond with surety, and made over the property as agreed; and afterwards becoming bankrupt, he fraudulently sold the property, which was thereby lost to the annuitant; certain formalities to perfect the lien, which the annuitant was advised by his counsel were unnecessary, not having been complied with. The lord chancellor held that the bond surety was entitled to vigilance on the part of the annuitant, and was discharged by his neglect.

If the surety is damnified by the negligence, he is discharged. This principle is admitted in *The People* v. *Bunce,* (13 *John. Rep.* 383;) and in *The People* v. *Jansen,* (7 *Idem.* 332,) the surety was held discharged by mere negligence. In some of the cases where the bond was for an indemnity, and some latitude of indulgence between the creditor and principal was contemplated, the rule has not been so rigid. The English courts of common law have admitted only a legal defence, and have held laches not to be a legal defence, for the very reason that the courts of equity held it to be an equitable one; as in *Davy* v. *Pendergrass,* (5 *Barn. & Ald.* 187,) where the obligation contemplated credits to be given. But in *Samuell* v. *Howarth,* (3 *Merivale,* 272,) where A. guaranteed the payment of goods to be furnished C. on a credit, and the vendor renewed the credits, though the length of credit was not limited in the guaranty, and though it appeared that the renewal arose from C.'s inability to pay, and that no injury could accrue to the surety, yet he was held discharged. And our courts have held the equitable defence good at law, when the forms of

proceeding would admit of its being made there. (*The People* v. *Jansen,* 7 *John. Rep.* 332.)

Since the bond and mortgage were executed, large and numerous payments have been made by Henry Gahn to the complainant. Will the court allow these payments to be so marshalled as to keep alive not only a debt due and bearing interest, but heavy arrears of interest also, and that against the estate of a surety? Jane Gahn had a right to have the debt called for when due—to have the resources of her husband put in requisition, and the payments he made applied on the mortgage, for her relief. In *Pidcock* v. *Bishop,* (5 *Dowl. & Ryl. Rep.* 509,) a surety gave a guaranty for a certain amount of goods, to be sold to his principal. The principal bargained with the plaintiff, that if he would sell him so many tons of iron under the guaranty, he would pay 10 shillings per ton over the market price, to be applied on an old debt. The goods were properly charged in the bill, and the 10 shillings not charged on the goods, but stated at the foot of the bill as so much for an old debt. No claim was made against the surety for this. But the court held that the effect of the agreement was to enable the plaintiff to apply on an old debt a part of those funds which the surety might reasonably expect were to go in discharge of his guaranty. That he might have been induced to give his guaranty, under the expectation that his principal would be able, out of the profits, to pay for the goods. That the contract was not binding on the surety, because his risk was increased by the private bargain, which tended to diminish the means of paying what he was surety for. That he had a right to expect the avails of the goods would go in his discharge.

In *Shaw* v. *Pictor,* (7 *Dowl. & Ryl. Rep.* 213,) Lord Alvanley had granted an annuity, for which Lord Foley was surety. The bankers' agents for both the grantor and grantee of the annuity had also a running bill account against Lord Alvanley, the grantor. The annuity being in arrear, and also a large sum due on the bill account, a letter was written at the instance of the bankers by an attorney, demanding payment of the annuity; in consequence of which, several sums were paid to the bankers by Lord Alvanley,

which the bankers applied on their bill account. Abbot, Ch. J. says : " The surety has a strong interest in saying the money paid in pursuance of this letter shall be considered as paid in my relief as surety. What took place in appropriating the money was behind his back." And so it was held. What was it to suffer H. Gahn to receive and retain monies but telling him in effect it was unnecessary to make payments either of principal or interest? Can it be supposed that Mrs. Gahn contemplated that the complainant and her principal would establish a relation, by which this bond might be suffered to sleep for 20 years without a single payment upon it, and then to be set up with all its accumulation of interest against her? It is the interest of a creditor to watch over his claim and to have his interest paid up ; and a surety has a right to put some dependance upon interest as stimulating the creditor to vigilance. It is not pretended that Jane Gahn had any knowledge of the transactions between the complainant and her husband. The taking of the note at 30 days, for the interest up to April, 1825, was a discharge pro tanto of the security. The surety is for a certain specified purpose, and none other ; and a mortgage, says Chancellor Sanford, (1 *Hopkins*, 234,) to secure a sum of money, is one of the most precise contracts known to our laws. Whatever changes the contract, discharges the surety. If the grantor of an annuity gives time to the principal, the surety is discharged. (*Eyre* v. *Bathrop*, 3 *Mad.* 221.) It is not necessary it should be by an instrument of a higher nature, nor by one that can discharge the obligation ; it is sufficient, if it be agreed, though by parol. In *Rees* v. *Berrington*, (2 *Vesey, jun.* 540,) the obligor took notes of the principal, and gave him time, and the surety was held discharged. This rule prevails, although the surety has sustained no actual injury. Lord Rosselyn says in the last case, I cannot try the cause by inquiring what mischief it might have done. The same is held in *Samuel* v. *Howarth*, (3 *Meriv.* 272,) before cited. And Lord Eldon, in *Boultbee* v. *Stubbs*, (18 *Vesey*, 20,) says, it is in vain to say that the indulgence to the principal, by taking the mortgage and giving him time, may be for the benefit of the surety ; nor will it vary the rule,

though the parties had no intention to release the surety or even expressly reserve recourse to him. The language of all the cases is, he agreed to one bargain, but not to a different one. You cannot make the surety's bargain. In *Boultbee* v. *Stubbs*, it was a clear case of benefit to the surety. The creditor held a bond with surety, and afterwards took a mortgage from the principal and agreed to receive the residue by instalments. *Bowmaker* v. *Moore*, (3 *Price's Exch. R.* 214,) was a suit against the surety in a replevin bond. A replevin suit had been commenced between the principals, and whilst pending, they agreed to refer it to arbitration, and that pending the reference no further proceeding should be had in the replevin suit, and that the agreement should not be construed to discharge the sureties. The reference fell through and the replevin suit went on, though it did not appear that the replevin suit could have been determined sooner than it was; yet the court held the sureties discharged.

Any act that varies the terms of the contract or enlarges the time of performance without the surety's consent, will discharge him. These principles are well established by our courts, and the cases are too familiar to be dwelt upon. We shall barely cite a few of them without comment : *King* v. *Baldwin*, 2 *John. Ch. Rep.* 554. 17 *John. Rep. S. C.* 384. *Walsh* v. *Bailie*, 10 *Id.* 180. *Ludlow* v. *Simond*, 2 *Caines' Cases in Error*, 1. *Rathbone* v. *Warren*, 10 *John. Rep.* 587.

We insist also that Jane Gahn is entitled to have the proceeds of her husband's interest *jure uxoris*, which was mortgaged with the wife's estate, first applied in satisfaction of so much of the bond debt as she may be liable for, before any part of such proceeds is applied in payment of the residue of the debt due on the bond, and *a fortiori* before the judgment creditors are paid. Whatever the complainant may claim from H. Gahn, whether on the bond or the note, over and above what the surety is liable for, must be considered, so far as regards the surety, as a distinct debt. Here are two funds mortgaged at the same time, the wife's fee simple estate and the estate of the husband, *jure uxoris*. They are distinct funds, and the husband's estate must be considered as having been regarded as an indemnity pro tanto for the surety. Admit-

ting that the complainant has a good lien by the mortgage for her interest demand, can she satisfy it out of a fund pledged with that of the surety ? It may be said that for one demand the complainant holds two funds, and for the other but one of those funds, and *that she has a right to satisfy the latter demand out of the separate fund and save the common fund for the first debt.* We answer that the husband's estate was mortgaged conjointly with the wife's. It was a pledge put in by the principal, and the surety has a right to it as an indemnity. It is the very principle upon which the case of *Capel* v. *Butler*, before cited, was decided. That case went much further ; for, by the rule there laid down, had the complainant lost her recourse upon the husband's estate, by a nonregistry of the mortgage or by any other neglect, the surety would have been discharged. And the same principle may be traced in the case of *Pidcock* v. *Bishop*, (5 *Dowl. & Ryl.* 509,) before cited. The language of the court there is, that if the creditor impairs those resources which the surety has a right to rely upon, he discharges the surety. In *Waddington* v. *Vreedenburgh*, (2 *John. Cas.* 221,) a copartner was allowed to stand in the place of a judgment creditor against the property of his copartner, under a judgment against both of them for their joint debt, which the latter had agreed to pay but which the former had been obliged to pay, in preference to assignees who were creditors of the latter. The court held that notwithstanding they were both principals as to the judgment creditor, yet, that under the agreement between the copartners, the former stood in the light of a surety, and was entitled to have the estate of his copartner applied to satisfy that judgment. That the subsequent assignees could not throw the judgment creditor, to whom both partners were liable, and who consequently had two funds, upon the retired partner, and thus leave the estate of the other to the assignees who had but that one. It is true, that in some of the older cases, the equities of the wife are stated in general terms to be the same with the lien. And they must originally have grown out of questions as to the right of exoneration out of the husband's assets. (*Roper's Hus. & Wife*, 141. *Robinson* v. *Gee*, 1 *Ves.* 252.)

The two cases of *Tate* v. *Austin*, (1 *Peer Wms.* 264,) and *Robinson* v. *Gee*, (1 *Ves.* 252,) are totally irreconcileable, and it can only be attributed to the different estimates formed of an estate in mortgage in modern times and formerly. The present is not the case of an application by the wife, but is a struggle by the creditor for two debts. Our courts make much less of the estate of the mortgagee than the English courts do, even at the present time. We never have adopted any principle like that in *Tate* v. *Austin;* and we have gone beyond all the English authorities in protecting the wife's estate against all but the specific debt for which it was pledged. (*Titus* v. *Neilson*, 5 *John. C. R.* 457.) From this case two observations may be drawn: 1. That a creditor who has an inadequate fund, but no claim upon the wife's dower, cannot throw a creditor upon the dower who has the same fund, and also the dower pledged for the payment of his debt; and yet it is clear that a creditor who has a right to resort to the personal assets, but has no lien upon the inheritance, can compel a creditor who has that fund and also a lien upon the inheritance, to resort to the inheritance in relief of the common fund. And this is done every day in England by a simple contract creditor who has no lien upon the inheritance. If a mortgagee should exhaust the personal effects, the simple contract creditor can step into the shoes of the mortgagee and resort to the inheritance for payment. And this distinction between the liability of the heir and that of the wife is directly applicable to this case. We aver, then, that in our courts, a creditor who holds no lien upon the dower, cannot have that dower exhausted for a debt for which it is pledged, in relief of the husband's estate pledged with it, even though he should go unpaid. 2. That it is a much stronger equity for the wife when her separate estate is pledged as security, and the husband's estate *jure uxoris* is pledged with it. In mortgaging her dower, the court consider her as pledging it for the specific purpose mentioned. She parts with her dower to the extent of the mortgage debt, and yet the dower at the time of pledging it is a mere contingent interest which, unless she survives her husband, can never be any thing more than an incident to the fee which is mortgaged.

THE CHANCELLOR. Previous to the examination of the main question in this cause, which is, whether the estate of Mrs. Gahn in the mortgaged premises is exonerated from the payment of the arrears of interest included in the note of April, 1825, it may be proper to dispose of an objection which is made to the decree even on the supposition that the main question might have been rightly decided in favor of Mrs. Gahn. It is urged by the appellant's counsel that if the wife is to be considered a surety merely, and if her estate in the mortgaged premises was discharged from the arrears of interest included in the note, still the decree is erroneous in not permitting the complainant to sell the husband's life estate in the whole mortgaged premises, in the first place, to satisfy those arrears of interest; leaving her estate to be sold to satisfy the principal and that part of the interest which is declared to be a valid lien thereon. There may be a slight mistake in this part of the decree; but the error, if any, is not of the kind supposed by the appellant's counsel. And I am inclined to think such mistake is in favor of, rather than against the complainant. If the lien for the whole mortgage money and interest still remained as a charge upon the wife's estate in the premises, there would be a plain and manifest equity, in her favor, to have her husband's estate in the mortgaged premises first sold, and the proceeds thereof applied towards the payment of the debt, for which the property of the principal debtor is first liable, in equity. And even subsequent incumbrancers upon the estate of the husband, by judgment or decree, could not object to this disposition of the property; as the prior equitable claim of the surety, to have the mortgage satisfied out of the property mortgaged by the principal debtor, would be paramount to the claim of a judgment creditor who had only a general lien upon the estate of his debtor, and which in this court is not permitted to prevail as against a prior equity. (*Howe's case*, 1 *Paige's Rep.* 125. 1 *Atkinson on Conv.* 512. 2 *Har. & John. Rep.* 64.) The application of this equitable rule, of throwing the charge upon the property of the principal debtor and extinguishing that fund in the first place in exoneration of the estate of the surety, is of every day's occurrence. And the only difficulty in understanding and applying it here, ari-

ses from the fact that the principal and surety have different estates in the same premises, instead of having distinct lots or separate parcels of property included in the same mortgage. If two lots were mortgaged for the security of the debt, one of which lots belonged to the principal debtor and the other to another person who joined with him in his mortgage merely as his surety, no one could doubt that in equity the lot of the real debtor should be first sold to satisfy the debt, and that the property of the surety ought only to be resorted to in case there was a deficiency. The principle contended for by the appellant's counsel, however, is, that if the debt was payable in two instalments, and the value of the lot of the principal debtor was only sufficient to pay the first, and the mortgagee discharged his lien against the surety, as to that instalment, by giving time to the principal debtor, the whole of the proceeds of the lot of the real debtor must nevertheless be applied to pay that instalment; leaving the whole of the second instalment to be satisfied out of the property of the surety. A principle which in its application would produce such a result, certainly cannot be correct. In the case supposed, the least that the surety would have the right to ask would be that the proceeds of the property of the real debtor might be applied to the payment of the two instalments rateably; and that only the balance of the last instalment should be charged upon the property of the surety. There is no difficulty in applying such a rule of construction to the case now under consideration. The life estate, or estate by the curtesy initiate of the husband, may be first sold, and the proceeds thereof applied, rateably, to the payment of the two sums directed to be ascertained by the report of the master. And then the wife's interest in such portion of the property as might be requisite to satisfy the balance of that part of the debt for which her estate in the premises is holden, could be sold for that purpose. Or if it should be thought most for the interest of all parties that the estates of the husband and wife should be sold together, the whole mortgaged premises might be sold, and the value of the husband's interest in the proceeds could be ascertained upon the principle of life annuities. As the value of the premises and of the husband's in-

terest therein have not yet been ascertained, it is impossible to say whether this mode of disposing of the proceeds of the different interests in the mortgaged premises, which is the only correct mode if the decree is right in other respects, would be more or less beneficial to the appellant than that adopted by the vice chancellor. And from the view I have taken of another part of this decree, any further investigation on that subject is unnecessary.

The general principle that a surety is discharged, where the creditor, without the consent of the surety, makes a binding agreement with the principal debtor to extend the time of payment, is not disputed. But it is insisted by the complainant's counsel that this principle is only applicable to the case of a surety who becomes personally bound for the payment of the debt; and that it cannot be extended to a person who merely mortgages or pledges his property by way of security for the debt of another person. It is also contended that the wife, who pledges her property for the security of her husband's debt, is not entitled to the benefit of those equitable rules which are constantly applied for the protection of other sureties; and that she will not be discharged by an act of the creditor which would be sufficient to bar his remedy against other persons standing in the situation of sureties.

Although I have not been referred to any case where this precise question has arisen, I am unable to discover any reason for the distinction between those cases where the surety pledges his personal responsibility for the payment of the debt, either with or without the additional pledge of his property, and the case of a simple pledge of his property as security, without any remedy over against him, personally, if the property pledged should prove insufficient. The reason of the rule, as laid down in the books, is, that by extending the time of payment, the risk of the surety is increased; or at least, that the nature of his liability is altered without his consent, and he is deprived of the power of an immediate resort to the principal debtor to compel him to pay the debt, for which the surety is liable to the creditor. And certainly, a person who has pledged his property to the full value of the debt, as security for another, will sustain the same injury by the giving of time to the principal debtor, as if his personal re-

sponsibility was pledged in addition to the mortgage upon his property. I am not prepared to say that the principle of discharging the surety by a mere extension of time, and where it is evident the surety has been actually benefitted by the arrangement, has not in some cases been carried too far. And, under such circumstances, I should not be disposed to extend that principle beyond the adjudged cases. But where the surety has been actually injured, by an extension of time granted without his consent, or where the creditor has relinquished a security against the property of the principal debtor, after notice of the equitable rights of the surety, the fact that such surety is not personally liable for the payment of the debt, and therefore can only be injured to the extent of the property which he has pledged to the creditor for that purpose, can make no difference in the application of this equitable principle in his favor.

By the common law, the wife was permitted to mortgage her inheritance for the security of her husband's debt, by a particular mode of conveyance. And, in this state, she is permitted to do it by the more simple process of joining with her husband in the mortgage, and acknowledging it before the proper officer. If the fact that she executed the mortgage merely as a surety for her husband, and as a guaranty for the payment of his debt in case of his default, was distinctly expressed upon the face of the instrument, no one could doubt that she was in truth a mere surety for the husband, to the extent of her interest in the mortgaged premises. And if the fact of suretyship does not appear upon the face of the instrument, it is always competent for the surety, in this court, to establish it by proof *aliunde*. It is insisted, however, by the appellant's counsel that when the wife has joined with the husband in a mortgage upon her inheritance to secure the payment of his debt, she is not entitled to the same protection which is extended to sureties in other cases. And in this position they are sustained by the written opinion of a most distinguished jurist, to whom the complainant submitted her case soon after the commencement of this suit. It is due to that gentleman, however, to say that it was an ex parte opinion, given as counsel, probably without adverting to what

might be urged on the other side of the question, and upon a statement of facts which are not given in the opinion. If the appellant's counsel are right upon this point, it certainly presents a glaring defect in the equity law of this country and of England, as no surety can stand in greater need of protection, against the inequitable conduct of the creditor, than a feme covert, under such circumstances. By the *Senatus Consultum Velleianum*, (*Digest, Lib.* 16, *tit.* 1,) all females, both married and unmarried, were prohibited from contracting as sureties for others, so as to bind either their persons or their estates, and the wife could in no case become security for her husband except by operation of law. This was also the law of Normandy, and some other provinces of France, where the Novel of Justinian, permitting the woman to renounce this exception in certain cases, was not followed until the promulgation of the Napoleon code. Since that time, however, the court of Cassation has decided that this restriction of the civil law is abolished in France, and that a wife may now become a surety for her husband. In Spain, and in our sister state of Louisiana, which has followed the Spanish law, this restriction upon the power of the wife to contract or to bind herself, either in her person or her estate, as a surety for her husband, still remains in full force. (*Institutes of the Law of Spain*, 216, 244. *Pilie* v. *Patin*, 20 *Martin's Rep.* 692.) And considering the peculiar situation in which the wife is placed when the husband is in failing circumstances, perhaps it would be well if our laws had thrown around her the same protection here. Certainly there is nothing in her situation as a married woman which, in reason, should deprive her of any of those rights which belong to other persons standing in the character of sureties. The civil law made no such distinction as is contended for here ; for in those cases in which she became surety for her husband by operation of law, she was subrogated to the rights of the original creditor, as against the husband and his estate. (*Pothier on Obl.* 324, *No.* 521, *B.*)

The first case I have been able to find in the English reports on this subject is *Rayson* v. *Sacheverel*, before Lord Nottingham, in 1682, (1 *Vernon's Rep.* 41.) In that case, as originally reported by *Vernon*, it appeared that manifest injus-

tice was done to the heir of the wife ; as the original mort-
gage money was paid off, and he was held liable for the pay-
ment of a further sum subsequently borrowed by the husband
on the credit of the mortgage. It appears, however, on refer-
ence to the minutes of the register, as stated in the note in
*Raithby's* edition of *Vernon,* that after the mortgage had be-
come absolute at law the husband paid a part of the debt, and
that afterwards, with the written consent of the wife, he borrow-
ed of the mortgagee a similar sum on the credit of this security,
but without levying a new fine on the second loan ; and that
the wife, with the consent of the husband, afterwards made a
will and devised the land to be sold for the payment of her debts,
and to pay this mortgage debt in particular. Lord Nottingham,
therefore, considering the right of the heir and devisee to re-
deem as a mere equity, the legal estate being in the mort-
gagee, said the mortgagee had as much equity to the money
as the heir had to the land ; and therefore he would not per-
mit the heir to redeem until the whole mortgage money was
paid. (*See* 2 *Ch. Cas.* 98, *S. C.*) In the case of *The Earl
of Huntingdon* v. *The Countess of Huntingdon,* (1 *Bro. P. C.*
1,) decided about twenty years afterwards, the wife had joined
with the husband in a mortgage of her estate, as a security
for his debt ; he promising to repay the money for which the
estate was mortgaged. The husband afterwards paid off the
mortgage and took an assignment thereof to trustees for his
own use. He afterwards devised the mortgage, together with
his personal estate, in trust for his younger children. Upon
a bill filed by the heir at law of the wife, Lord Keeper Wright
would not permit him to redeem the estate except upon pay-
ment of the balance of the mortgage money, after deducting
therefrom the amount of rents and profits of the estate receiv-
ed by the husband after the death of the wife. But upon ap-
peal to the house of lords this decree was reversed ; and the
heir was permitted to recover the estate discharged of the mort-
gage. The case of *Tate* v. *Austin,* (1 *Peer Wms.* 264, 2 *Vern.*
689, *S. C.*) came before Lord Cowper in 1714. The wife had
mortgaged her inheritance to raise a sum of money for the
husband to equip him as an officer in the army ; he covenant-
ing to pay the mortgage money. The husband, by his will,

gave a specific legacy to the defendant Austin ; and his personal estate being insufficient to pay both the mortgage money and the legacy, the question was whether the wife could come in upon the personalty for the redemption of the mortgage. The lord chancellor decided that the personal estate must be applied to redeem the mortgage, in preference to the payment of the legacy ; but that this claim of the wife must be postponed until all the debts of the husband had been paid out of the estate. This case is relied on by the appellant's counsel as a direct authority for saying that the wife is not entitled to any of the privileges of a surety, although she may be paid out of the estate of the husband, if there is a surplus. No reason is given for postponing the claim of the wife until after all other debts were paid ; and, as Lord Thurlow says, this was not the real question in controversy in the cause, and consequently " was not weighed in argument." Lord Cowper probably considered the claim of the wife as a mere equitable claim against the estate of her husband, for which no suit at law could be brought against his personal representatives ; without adverting to the fact that the covenant of the husband to pay the mortgage money and interest was still an available security in the hands of the mortgagee, which would enable the latter to claim payment out of the real and personal assets of the husband, to the exclusion of the simple contract creditors, and that the wife, standing in the situation of a surety, was entitled to be substituted in the place of the mortgagee. Lord Hardwicke certainly understood the rights of the wife to be the same as those of any other surety, in this respect. For in the case of *Parteriche* v. *Powlet*, which came before him twenty-eight years after this decision of Lord Cowper, (2 *Atk. Rep.* 382,) he says, if a husband has a mortgage on his estate, and a wife joins with him in charging her own, and she survives him, though her estate is liable to the mortgagee, yet in this court her estate shall be looked upon only as a pledge ; and she is entitled to stand in the place of the mortgagee, and to be satisfied out of her husband's estate. His lordship could not have meant, as it was held in *Tate* v. *Austin*, that she was only to come in upon his personal estate after the payment of all the simple contract creditors. For if

1832.

Neimcewicz
v.
Gahn.

she was entitled to stand in the place of the mortgagee, she was not only entitled to the benefit of her husband's covenant, as a charge upon his real assets, which the simple contract creditors could not reach, but she was also entitled to an assignment of the mortgage upon the husband's estate, so as to give her a preference even as to the specialty creditors. And this opinion of Lord Hardwicke is again reiterated by him, seven years afterwards, in the case of *Robinson v. Gee*, (1 *Ves. sen.* 252.) He there says, " It is a common case for a wife to join in a mortgage of her inheritance for a debt of her husband ; and after her husband's death she is entitled to have her real estate exonerated out of the personal and real assets of the husband, the court considering her estate only as a surety for his debt ; and none of his creditors have a right to stand in place of the mortgagee, to come round upon the wife's estate." In the case stated by his lordship, the wife could not be considered a mere equitable creditor of the estate of the husband, and as inferior even to the simple contract creditors ; for it was admitted she had a claim upon the real estate, which estate they could not reach. Neither could she reach the real assets, except upon the principle of being substituted in the place of the mortgagee, who was a specialty creditor of the husband by virtue of the bond, or of the implied covenant in the mortgage, which the latter executed with the wife. It is evident, therefore, that Lord Hardwicke understood that in such a case the wife had a right to be substituted in the place of the mortgagee as a specialty creditor ; and that as such she might exhaust the personal estate of the husband to the exclusion of simple contract creditors, who could have no claim to substitution except upon the principle that the personal estate had been exhausted by a creditor who had a lien upon property which they could not reach. This questionable point in *Tate* v. *Austin* does not appear to have been followed in any more recent decisions. On the contrary, it stands opposed in principle to the late decision of Sir John Leach, in *Aguilar* v. *Aguilar and others*, (5 *Mad. Rep.* 414.) And from the manner in which it was spoken of by Lord Thurlow, in *Clinton* v. *Hooper*, (3 *Bro. C. C.* 211,) it is evident that he considered it as having been decided without due

consideration. From the very nature of suretyship, whether the personal responsibility of the surety, or his property only, is pledged for the debt of another, if the surety is compelled to pay the debt, either to save his property or to discharge his personal obligation, he has an equitable claim to be subrogated to all the rights which the creditor had, against the principal debtor or his estate. And as the decision in *Tate v. Austin* stands opposed not only to this fundamental principle in the law of suretyship, but also to the deliberate and reiterated opinion of one of the most distinguished equity lawyers·which Great Britain or any other country ever produced, I think it should be considered as a hasty decision, made without due consideration of the question decided ; and that it ought not to be followed.

Where the wife does, in fact, mortgage her estate merely as a surety for her husband, with a clear and explicit understanding between them that he is to pay off and satisfy the mortgage money and interest out of his own property, there can be no good reason, especially after the death of the husband, why she should not be entitled to all the rights of a surety in other cases, and be substituted in the place of the creditor, as to all his remedies against the principal debtor for the recovery of his demand. But it is said that if the wife is to be considered as a surety, as between her and the husband, she has no claim to be considered as such in regard to the creditor ; or, in other words, that she cannot be permitted to object to the creditor's claim upon her estate, on the ground that he has by his own act incapacitated himself from ceding to the surety his rights and remedies, against the principal debtor and his estate, as they originally·existed. Let us see what would be the effect of the adoption of such a principle, in a case like the present. The husband and wife, in the right of the wife, own an estate worth $20,000, in which the husband's estate for life, as tenant by the curtesy initiate, is worth $6000. The husband and wife join in a mortgage to a creditor of the former, to secure a debt of $5000, payable in one year ; the wife joining in the mortgage and pledging her estate in the premises merely as a surety for the husband. If she is entitled to be considered in that character as against him, upon a bill of fore-

closure brought by the creditor, she will be entitled to have his life estate in the premises sold in the first place to satisfy the debt. It is evident, therefore, that if the debt is collected when ·it becomes due, or within a reasonable time thereafter, .the husband's life interest in the premises will be sufficient to pay the debt. But if she has not the rights of a surety, as against the creditor, he may release the estate of the husband from the lien of the mortgage, to enable some other creditor of the husband to reach the same by execution ; or he may consent to wait for the principal sum until after the death of the husband, for the purpose of keeping his money out at a high rate of interest. In either case, it is evident, the whole debt would be eventually thrown upon the estate of the wife, and contrary to equity. And yet, if the principle contended for by the appellant's counsel is correct, all this injustice might be done to the wife, in such a case, without impairing the lien of the creditor upon her estate in the premises. In the case supposed, if the lien upon the estate of the husband had not been discharged, or a valid agreement to extend the time of credit had not been made, the wife, by her next friend, might have filed a bill against her husband and his creditor, immediately after the debt became due, to have the debt paid out of her husband's interest in the premises ; upon the same principles upon which similar relief would be extended to any other creditor. And if the wife would be entitled to such relief in case of the mere neglect of the mortgagee to proceed and collect his debt when it became due, it would certainly be inequitable for the creditor, who had full notice of that right, to deprive her of it by any voluntary act of his, and without her consent.

.The principles upon which the claim of the wife, standing· in the situation of security for her husband, rest being settled, it only remains to apply those principles to the case under consideration. I have already stated that I was not disposed to extend the principle of discharging sureties beyond the adjudged cases upon a mere extension of credit and where the surety has sustained no injury by the delay. By the civil law the *exceptionem cedendarum actionem* did not reach such a case. If by

the voluntary act of the creditor, he had disabled himself from ceding to the surety his right of action, or other remedy against the principal debtor or his estate, the surety, by virtue of this exception, might obtain a decree of the court declaring the demand of the creditor inadmissible for so much as the surety might have procured by the cession of those actions and remedies which the creditor had disabled himself from making. So by the *Napoleon Code, (Art.* 2039,) it is declared that the surety is not discharged by the simple prolongation of the term allowed by the creditor to the principal debtor. As the whole of this doctrine depends upon the equitable principle that the creditor shall do no act to the injury of the surety, it is doubtful whether mere extension of time where the surety was not injured thereby, should have been held to discharge his liability ; except in those cases where the rights and duties of the parties are regulated by or form a part of the contract. And there is evidently a very substantial objection to applying the principle to the case of a feme covert who joins with her husband in a mortgage, upon her own estate, or upon the estate of the husband, to cover her contingent right of dower therein. As she can make no valid agreement respecting her real estate except in the particular mode prescribed by the statute, it would frequently be necessary to sacrifice her property because the creditor could not agree with the husband to extend the time of payment, even for a few months, without discharging his lien. In this case there is no pretence that the husband had the means of paying any part of the debt at the time the note was taken. And it could not delay the proceedings, as the whole of the principal was still payable immediately so that the possession of the property could have been recovered in ejectment ; and the time of credit as to the arrears of interset would necessarily expire long before a foreclosure of the mortgage could be had.

Without intending, however, to express any definitive opinion upon this question, I am satisfied, upon another ground, that the claim of Mrs. Gahn, to have her estate relieved from any part of the principal or interest due on this mortgage, must be disallowed. As there were no proofs taken in the cause va-

1832.

Neimcewicz
v.
Gahn.

rying the case from that which was made by the answer of Mrs. Neimcewicz to the cross bill, the whole of this defence rests upon that answer alone. To discharge a surety from his liability, by any act of the creditor in violation of his equitable rights, it is not only necessary that the fact of suretyship should be established, but that the creditor, at the time of the act complained of, should have known that he stood in the situation of a surety. (1 *John. Ch. Rep.* 414.) In this case it did not appear upon the face of the securities whether the estate belonged to the husband or to the wife, nor whether the money was to be used for the benefit of the wife's estate, or otherwise. It is true the husband gave his own bond for the debt. But as the wife was incapable of contracting a personal obligation, the securities would have been taken in the same form, although it had been intended and known to all the parties that the money loaned was to be expended, exclusively, in improvements upon the wife's estate. The appellant, by her answer to the cross bill, admits that the mortgaged premises belonged to Mrs. Gahn, by descent from her mother; and I presume the appellant also meant to admit she was informed of that fact at or before the execution of the mortgage. But I do not understand her to admit that she knew Mrs. Gahn executed the mortgage as a mere surety for her husband, or that she was aware that the moneys loaned were to be applied to his own use exclusively; or that she was apprised of any agreement or understanding between the husband and wife that he was to pay off the mortgage monies, and interest, with his own means. On the contrary, I should infer from this answer that the principal dependance of Gahn and wife, for their support, was upon the income or sales of the wife's property. That Mrs. Neimcewicz at least supposed the monies loaned by her were for the benefit of the wife as well as the husband; to prevent the necessity of a sale and sacrifice of her estate, to keep up and support their family establishment, while that estate was constantly increasing in value. If such was the understanding and belief of Mrs. Neimcewicz, although she may have been in an error as to the facts, as they really existed, she was not bound to consider Mrs. Gahn in the light of a mere surety; and the lien of her

1832.

Neimcewicz
v.
Gahn.

mortgage could not be affected by a simple extension of the time of payment, under such circumstances.

The decree of the vice chancellor must therefore be reversed, with costs to be paid out of the proceeds of the mortgaged premises. And there must be a reference to a master, in the usual form, to ascertain and report the amount due on the mortgage, including the arrears of the interest contained in the note ; and for a sale of the mortgaged premises on the coming in and confirmation of the report; and directing the master who sells, to pay the amount reported due, with interest and costs, out of the proceeds of the sale, and to bring the residue into court to abide the further order of the chancellor in the premises. As it is evident from the pleadings that the wife has a residuary interest in the property mortgaged, and may be entitled to have the whole mortgage money satisfied out of her husband's interest in the premises, she may elect to have his interest in the premises sold separately, for the purpose of ascertaining its value, and having her equitable rights provided for in the distribution of the surplus monies. Or she may have the estates of both, in the whole premises, sold together, by lots or otherwise as will be deemed most for the interest of the parties ; and may have the value of the husband's estate in the proceeds of the sale estimated upon the principle of life annuities.

Since my opinion in this case was reduced to writing and prepared for delivery, I have seen a recent decision of the late Lord Chancellor Hart, in the case of *Lord Harberton* v. *Bennett and others*, (*Beatty's Ch. R.* 386,) where it was held that the mortgagor who had mortgaged his property, merely, as a security for the debt of a third person, without pleading his personal responsibility, was entitled to the ordinary rights of a surety ; and that the lien of the mortgage was discharged in consequence of a relinquishment by the creditor of a subsidiary security against the principal debtor, whereby the surety's right of substitution was at an end.