KINGS COUNTY—HON. JESSE C. SMITH, SURROGATE—1853.

## *In re* WILLIAMS.*

*In the Matter of the accounting of* LUCY A. WILLIAMS, *executrix, &c., of the Last Will and Testament of* R. G. WILLIAMS, *deceased.*

The testator had purchased for his wife certain real estate which she held in her own name, subject to the joint bond of the husband and wife, and to the wife's mortgage for the purchase-money.  The widow as executrix, paid off the bond with the funds of the estate ;—*Held*, that she was not entitled, on an accounting, to be credited for the amount thus paid.

Parol evidence that at the time of making the bond and mortgage, and subsequently, the testator declared his intention to pay off the incumbrance, and give the property to his wife unincumbered,—*Held*, inadmissible.

The will directed the whole estate to be converted into money, and, among other provisions, out of the fund, directed a certain sum to be invested, the interest of which was to be paid to the wife, but without expressing it to be in lieu of dower ; and another sum to be invested, and the interest paid to his adopted daughter.

*Held*, 1. That whether these provisions are legacies or annuities, they are general, and are subject to abatement with the other general legacies of the will.

2. That no time being stated for the payment of the interest to the widow and adopted daughter, the widow is not entitled to interest until one year from the granting of letters ; but that the adopted daughter is entitled to interest from the death of the testator, he standing in *loco parentis*, and there being no other provision for her maintenance.

LUCIEN BIRDSEYE, *for widow, executrix, and legatee.*

A. C. BRADLEY, *for executor and legatee.*

THE SURROGATE.—The testator devised and bequeathed to his wife his household furniture, gold watch, silver plate, horses, carriages, harness, &c., and also his right, title, and interest, if any he had, in the house and two lots occupied by

* Reported in 12 *N. Y. Leg. Obs.*, 179.

him in Pacific-street, Brooklyn, at the time of his death. To the heirs of his brother, Milo Williams, he devised a farm in Oswego county. To his brother, Isaac Newton Williams, he devised another farm, and to his brothers he bequeathed his wearing apparel.

He then ordered and directed his executors to sell and dispose of all the remainder of his property, real and personal, and to convert the same into money, thereby authorizing them to convey any of his real estate, and after paying all his just debts, and testamentary expenses, to apply and dispose of the same as follows:

To invest $15,000, and pay the interest semi-annually to his wife, during her life. In like manner to invest $5,000, and pay the interest to Ann Eliza Denison, an adopted daughter of the testator, during her life, and to invest $2,000, and pay the interest to his mother, for life; the like sum, and pay the interest to his brother, Milo Williams, for life, and the like sum, and pay the interest for the support of his brother, Emilus Williams, and to pay pecuniary legacies for different amounts to his brothers, and to the relations of the wife of the deceased, and to religious and charitable societies, in all to the amount of $31,000; to appropriate $1,000 for the erection of a monument, and the remainder of his property he left to be appropriated according to the discretion of his said executors, and he nominated and appointed his wife, Lucy Ann Williams, executrix, and his brother, Charles Byron Williams, executor of his will.

The testator in his lifetime, and within a year of his death, purchased some real estate in the city of Brooklyn, from Hosea Webster, upon which he paid $1,250, cash, and was to give a mortgage for $3,750 of the purchase-money, with a bond payable in one year, or at any time within the year, upon thirty days' notice. After the deed had been drawn directly to the testator, at his request another deed was drawn and executed by Hosea Webster, directly to Lucy Ann Williams, the wife of the testator, and a joint bond was made by the testator and his wife, with the mortgage of the wife to secure

the $3,750. In this condition the property remained until the decease of the testator, the title standing in the name of Lucy Ann Williams, subject to the mortgage of $3,750, for which the testator and wife had given their joint bond.

After taking out letters testamentary, the executrix paid off the bond with the funds of the estate, cancelled the mortgage, and now claims to have the payment allowed in her account as executrix. To this, the co-executor, Charles Byron Williams, who is also a legatee under the will, objected.

The counsel for the widow offered to prove by Cyrus P. Smith, Esq., and the Rev. Dr. Spear, that the testator, at the time he purchased the real estate in question, and subsequently thereto, stated that he intended to give it to his wife, and to build a house upon it for her; that he gave the mortgage for a short time, because he had not the money to spare from his business at that time, and that he intended to pay off the same, and was making arrangements so to do, at the time of his death. This testimony was objected to, on the ground that it was not competent to show by parol testimony the intention of the parties in the transaction which resulted in the execution of the deed and of the bond and mortgage.

On the other hand it was insisted, on the ground that the transaction made the testator the principal, and his wife the surety, that the testimony was admissible for the purpose of showing that such was the relation between the parties. It did not appear to me that the testimony was admissible as a part of the transaction, nor for the purpose of showing the relation claimed between the parties of principal and surety, so as to bring the case within the authorities of *Sisson* v. *Barrett* (6 *Barb.*, 199; S. C., 2 *N. Y.* [2 *Comst.*], 406) and *Robison* v. *Lyle* (10 *Barb.*, 512).

I, therefore, refused to admit the testimony, and reserved the question whether the executrix should be allowed a credit for the payment of the bond.

On the argument upon the final submission of this case to me, three questions were fully and ably discussed by the learned counsel for both parties.

*First.* Whether the credit of $3,897.50 in the account of the executrix for the payment of the joint bond of the testator and herself, should be allowed.

*Second.* Whether the bequests in the will to the widow, of the interest and income of $15,000 during her life, and of the interest and income of the $5,000 to the adopted daughter of the testator, should abate with the pecuniary legacies in the will of the testator; and

*Third.* From what time interest is to be allowed to the widow and adopted daughter upon the said bequests or legacies.

In regard to the question whether the credit of $3,897.50 in the account of the executrix for the payment of the joint bond of the testator and herself to Hosea Webster, should be allowed, I do not think, under our present statutes, that the general direction in a will to pay all the just debts of the testator, without any expression showing an intent to pay debts secured by mortgage, can be held to embrace this latter class of debts. It is in effect as if the testator had said nothing about the payment of his debts. The law requires the payment of all just debts, except those secured by mortgage, before any legacies can be paid, and the provisions (1 *Rev. Stat.*, 749, § 4, and 2 *Rev. Stat.*, 102, § 14, subd. 2) point out the course to be pursued in the payment of debts upon the settlement of estates. Under these provisions, it appears to me that the debts secured by mortgage until a foreclosure and a deficiency found, are not to be regarded as debts to be paid in the course of administration, unless they are expressly or by implication so directed in the will.

It is said, however, that a married woman cannot make a bond, and that the joint bond of the husband and wife in law, is the debt of the husband. This, as a proposition of law, is undoubtedly true; but it has been held in equity, that a wife may join in a bond to charge her separate estate. (*Hulme* v. *Tenant,* 1 *Bro. C. C.,* 15; S. C., 2 *Dick.,* 560; *Pybus* v. *Smith,* 1 *Ves., Jr.,* 189; S. C., 3 *Bro. C. C.,* 340; *Standford* v. *Marshall,* 2 *Atk.,* 69.)

This being a contract in reference to the consideration-money for the purchase of the property which was conveyed to her as her separate estate, I cannot see why she could not make this bond to be valid and binding as against her estate; and though it is true that if the holder of the bond had sued the executors of the testator in a court of law, a judgment would have been paid out of the personal assets of the deceased; yet, as between the legatees under the will of the deceased and the executrix, they could have compelled her to pay the bond so secured by her mortgage, out of the real estate pledged for its security.

I have not been able, after listening to the able arguments of counsel and a close examination of the authorities cited, to divest myself of the strong impression made upon my mind, that the transaction in reference to this real estate amounted to this: That the testator gave to his wife the title, subject to the incumbrance of the mortgage upon it given for a part of the purchase-money, and however clear may have been his intention to pay off this bond during his lifetime, so as to give to his wife the property free from incumbrances, yet having failed to accomplish his purpose, the gift was incomplete at his death, and must be so considered and treated on this accounting, and the executors cannot be called upon to complete the gift. (*Williams on Executors*, last ed., 1505, and cases in note; *Cotteen* v. *Missing*, 1 *Maddock*, 176.)

Viewed in this light, it seems to me that instead of the wife or her property being surety to the husband, the husband by uniting in the bond to pay a portion of the purchase-money which was charged as an incumbrance on the estate of the wife, became the surety of the wife in aid of her estate; and therefore the authorities of *Niemcewicz* v. *Gahn* (3 *Paige*, 614), *Warner* v. *Price* (3 *Wend.*, 397), and others, cited by counsel for the executrix on this point, are not applicable to this case.

The next question is, whether the bequests in the will of the testator, to invest $15,000 and pay the interest to his

wife, semi-annually, during her life, and to pay to his adopted daughter, Ann Eliza Denison Williams, the interest of $5,000 during her life, must abate with the general legacies given by the will, as it appears that there are not assets sufficient to pay the general legacies in full and to make these investments.

It is said by counsel for the widow and her adopted child, that these bequests are by law annuities, and are not, therefore, subject to abatement with the general legacies. In the view which I take of this matter, it is not decisive of the case whether we term these provisions for the widow and child annuities or legacies. They answer the most approved definition of annuities in this, that they are grants of certain sums of money to be paid by the representatives of the grantor at the expiration of fixed, consecutive periods, for life. (*Lumley's Law of Annuities*, 1.) They are also legacies, because they are gifts by a testator in a will wherein an executor is appointed, to be paid by the executors (2 *Williams on Ex.*, 905), and the principal to be invested to raise the semi-annual payments of interest, is to be taken from the body of the estate.

Perhaps the best definition to be given to these bequests, is, that they are legacies for life, with remainder over. (*Gibson* v. *Bott*, 7 *Ves.*, 96; 2 *Williams on Ex.*, last ed., 1193.)

The will provides that the executors are to sell and dispose of all the estate of the deceased, both real and personal; to convert the same into money, and out of the proceeds to set apart these several sums with others for investment, and to pay a large number of general legacies. The whole estate is to be converted into money, and to make one general fund, out of which the sums are to be set apart from which this income is to be raised and the general legacies are to be paid. The general legacies and the investments being charged alike upon the general fund, I do not see how we are to avoid the well-established rule, that these annuities or legacies for life are general legacies. (2 *Williams on Ex.*, 1172, last ed.; 1 *Roper on Legacies*, 203, ed. of 1848.)

It was insisted, upon the argument by counsel for the executrix, that the authorities cited in *Williams on Executors*, at page 1172, to sustain the proposition that an annuity charged on the personal estate is a general legacy, do not sustain the proposition. I have examined them somewhat carefully, and can discover no cause for such a doctrine. But if I had come to the conclusion that they did not sustain the proposition, I should have distrusted my own judgment, after repeated recognitions of the doctrine in the best elementary writers upon the subject, and in the authorities from the English courts, cited in the note to *Williams on Executors*. As to the argument that those bequests are specific legacies, because they are charged on real estate, in the case of *Creed* v. *Creed* (11 *Clarke & Finn.*, 508), in the House of Lords, Lord COTTENHAM giving the judgment of the house, says, at page 510: "Their claims are pecuniary legacies charged indeed upon the land, upon a deficiency of the personalty; but such a charge cannot alter the character of the legacies, or make them specific." It is claimed, however, that though these are general legacies, they do not abate, for the reason that as to the widow, the provision for her is in lieu of dower, and as to the adopted daughter of the deceased, it is for her support and maintenance. To entitle the widow to the benefit of the rule, it must appear expressly or by fair inference from the will itself, that the legacy is given in lieu of dower. It is not contended that there is any such expression in the will, but it is insisted that as the testator directs his estate, both real and personal, to be converted into money, for the purpose of making the investments for the widow and adopted daughter, and as the whole title to the real estate cannot be given without a release of dower by the widow, therefore the testator intended this bequest to the widow to be in lieu of dower. I do not see how any such intention is to be implied from the language of the will or from the character of the bequests. It has been decided (see 1 *Bright's Husband & Wife*, 558, 559, ed. 1850, and the authorities there cited), that no implication would arise from the circumstances that the es-

tate was devised to the wife and other persons as trustees for sale, and the proceeds directed to form parts of the testator's personal estate, and benefits given to the widow out of the funds so constituted—sufficiently clear to oblige the widow to elect between her testamentary provision and dower in the lands; and the rule is the same in regard to the election of the provision in lieu of dower, as in reference to the question of non-abatement of the legacy of the widow. There must be a clear intention that the provision is in lieu of dower, to compel the election or to prevent the abatement of the general legacy. In the absence of any declaration or intention appearing in the will of the testator, or of any implications arising therefrom that the provision for the widow was in lieu of dower, and of any expression or implication that he intended to give a priority in the payment to the widow or adopted child of their several legacies, I do not see how it is possible to avoid the application of the rule, that these bequests, being general legacies, must abate with the other legacies in the will. (2 *Williams on Ex.*, 1171; 1 *Roper on Legacies*, 420, ed. of 1848.)

In regard to the question of interest, and the bequests to the widow and adopted daughter of the deceased, the statute provides (2 *Rev. Stat.*, 90, § 45), that after the expiration of one year from the granting of letters testamentary or of administration, the executors or administrators shall discharge the specific legacies bequeathed by any will, and pay the general legacies if there be assets; and if there be not sufficient assets, then an abatement of the general legacies shall be made in equal proportions. Nothing is said in the statute about interest. The well-established rule of law on this subject, is, that when no time is named, and in the absence of any contrary intention to be collected from the will, the legacy itself is payable at the end of the year from the testator's death; and if the executor do not pay it then, interest becomes due to the legatee from that period. (2 *Roper on Leg.*, 1251; 2 *Williams on Ex.*, 1222.)

If, then, these bequests are general legacies, or legacies for

life, and of consequence not payable until the end of the year, no interest can be charged on them for the first year after the death of the testator, unless they are excepted from the above general rule. An exception is made where the testator is the parent, or is in *loco parentis*, of the legatee; that interest shall be allowed as a maintenance from the time of the death of the testator, if there is no other provision for that purpose. (2 *Williams on Ex.*, 1226.) There is no other provision for the maintenance of Ann Eliza Denison Williams, the adopted daughter of the testator, except the payment to her during her natural life, of the interest and income of $5,000. Under the above rule, therefore, she would be entitled to interest on the proportionate share of her legacy for life from the death of the testator. But the rule in reference to the wife of the testator, seems to be, that though she have no provision in the will for her support, unless the legacy is given to her in lieu of dower, she is not entitled to interest until one year after the death of the testator. (2 *Roper on Leg.*, 1272.) In this case, however, there is a provision in the will giving to the widow a specific legacy, and not an expression or intimation that the legacy for life is in lieu of dower; and besides, it appears that she is entitled to a dower-interest in lands specifically devised in the will, as well as in other lands devised to the executors, so that I do not see how, under any view of this question, she can be entitled to interest on her legacy for life until one year after the death of the testator.

In the case of *Craig* v. *Craig* (3 *Barb. Ch.*, 76), the interest on the annuity to the widow is saved because it is in lieu of dower; and the interest on the annuity to the lunatic son is saved by the rule that it is for the support and maintenance of the son of the deceased. (*Van Bramer* v. *Hoffman*, 2 *Johns. Cas.*, 200.)

I have devoted much time and study to this case, with a continued hope that I should find some ground on which to relieve the widow of the testator from the position in law which the failure of assets to pay the legacies under the will

of her deceased husband has placed her. There can be little doubt, that had the attention of the testator been called to the matter when he executed the will, whether he intended that the provision for his wife and adopted child should be preferred to the other general legacies, he would have said, unhesitatingly, that such was his desire. But I am not at liberty " to speculate upon what the testator might mean as to preferring a legacy on account of the object or purpose to which it is given." (1 *Roper on Leg.*, 421–425.) But I am to determine this case from the intention as expressed in the will. And applying well-settled rules of law to that instrument, I can come to no other conclusions than those already stated by me.

The result of my examination of the questions submitted to me, therefore, is—1st, That the executrix is not to be allowed a credit for the payment of the bond of the deceased to Hosea Webster; 2d, That the legacies for life to the widow and adopted daughter of the deceased are subject to abatement with the other general legacies in the will of the testator; 3d, That interest is to be allowed upon the amount to be set apart for the adopted daughter from the death of the testator; and 4th, That interest is to be allowed the widow on the amount to be invested for her benefit after one year from the date of the letters testamentary.