MARY C. SAVAGE *vs.* CHARLES A. WINCHESTER, Administratoi.
PAMELIA WHITMAN *vs.* SAME.

A widow who has joined with her husband in a mortgage of her separate estate to secure his debt, which she has paid since his decease for the purpose of exonerating her estate, may prove the amount before commissioners of insolvency upon his estate.

A creditor may prove his debt against the estate of his deceased debtor before commissioners of insolvency, without first surrendering a mortgage of the separate estate of the debtor's wife, which he holds as security for the debt.

APPEALS by the administrator of the estate of Edward Savage from the allowance by commissioners of insolvency of the claims of the plaintiffs against his estate. The cases were argued together at the last term in Hampden, and are stated in the opinion.

*E. W. Bond,* for the plaintiffs.

*C. A. Winchester, pro se.*

HOAR, J. In the first of these cases, the wife of a deceased ' debtor, whose estate is represented insolvent, and who had joined with her husband in a mortgage of her separate estate

to secure one of his debts, having paid the debt since his decease, for the purpose of exonerating her estate, now seeks to prove it against his estate before commissioners of insolvency.

In the second case, a creditor of the husband, who holds as security a mortgage of the separate estate of the wife, seeks to prove the debt in like manner, without surrendering the security.

The decision of both cases rests substantially upon the same principle, and we are of opinion that in each the plaintiff is entitled to recover.

It has been settled in this commonwealth that where the creditor of the insolvent estate of a deceased person holds a mortgage or other collateral security for his debt, which he received from the debtor, he cannot be admitted to prove his debt, except for the balance which may remain after deducting the value of the security, which is first to be ascertained by sale or appraisal, unless he will surrender the security to go into the common fund for the payment of all the creditors. *Amory* v. *Francis,* 16 Mass. 308. *Middlesex Bank* v. *Minot,* 4 Met. 325. But it is obvious that this rule could have no proper application to a case where the collateral security was furnished by a third person, not primarily responsible for the debt; because, if the security were first applied to the reduction of the debt, it would *eo instanti* create a new debt of equal amount in favor of the surety whose property was thus expended.

In the case of *Whitman* v. *Winchester,* the question simply arises, whether a mortgage made by the husband and wife, of the wife's separate estate, to secure the debt of the husband, is to be treated, in the settlement of the husband's estate in insolvency, as a security received from the husband, or from a third person, standing in the position, and entitled to the rights of a surety. In the other case, though the claim is made by the wife herself; and, as it was held in *Jackson* v. *Parks,* 10 Cush. 550, she can maintain no action against her husband's administrator upon a contract made with her by her husband; yet, as her title to the notes has accrued since her husband's death, there is no technical difficulty, and her rights are the

same as if the claim were made in the name of the Springfield Institution for Savings, the original mortgagee.

The question thus presented is novel in the jurisprudence of this commonwealth; but it is settled in England by a series of decisions, and upon grounds which are satisfactory to us.

The general principle seems to be that the wife is regarded in equity as a feme sole, so far as her separate estate is concerned. When therefore the husband and wife join in a mortgage of her land to secure a debt of the husband, her estate is considered only as a security for the debt, for which the husband and his estate are primarily liable; and the wife or her heir will, after the death of the husband, be entitled to have it exonerated out of the estate of the husband. So strong and clear is this equity of the wife, that it may be asserted even by a creditor of hers, where her personal representatives refuse to take measures to enforce it. *Lancaster* v. *Evors*, 10 Beav. 154.

The early and leading case upon the subject is that of *Huntington* v. *Huntington*, 2 Vern. 437, in which the decision of the Lord Keeper Wright against the right of the wife to the exoneration of her estate was reversed by the house of lords. 2 Bro. P. C. (2d ed.) 1. In the subsequent case of *Tate* v. *Austin*, 1 P. W. 264, it was said by Lord Cowper, that although the mortgage should be regarded as the debt of the husband, yet " all other debts of the husband shall be preferred to this." And this limitation of the wife's right was recognized by Lord Thurlow in *Clinton* v. *Hooper*, 1 Ves. Jr. 189; putting it upon the ground that a contract between the husband and wife could not be implied in equity, when it would not be in law. But this distinction, which rests upon no foundation which would not be fatal to the claims of the wife in all cases, even against the husband's heirs or devisees, has been repudiated in all the more recent cases in England, and must be considered as no longer supported by authority. The rule was stated broadly, without any such restriction, by Lord Hardwicke in 1742, in the case of *Parteriche* v. *Powlet*, 2 Atk. 383; and in 1749 in a *dictum* in the case of *Robinson* v. *Gee*, 1 Ves. Sen. 252. In *Kinnoul* v. *Money*, 3 Swanst. 217 *note*, the same doctrine is held by Lord

Camden; and in *Aguilar* v. *Aguilar*, 5 Madd. 414, it was decided that the wife was entitled to the exoneration of her estate, not only against her husband, but against his assignees in insolvency.

Pothier states the rule of the civil law to be, that "if, during the community of goods between husband and wife, an annuity, which was only due by one of them, has been redeemed by the money of the community, the other is, as to his or her part in the community, subrogated *pleno jure* to all the actions of the creditor against the debtor." 1 Pothier on Obligations, 521. *b.*

The courts of New York have sustained the doctrine in *Aguilar* v. *Aguilar* to the fullest extent, in the case of *Neimcewicz* v. *Gahn*, 3 Paige, 614, confirmed in the court of errors, 11 Wend. 312. The same doctrine is recognized also in *Hawley* v. *Bradford*, 9 Paige, 200; *Fitch* v. *Cotheal*, 2 Sandf. Ch. 29; and *Loomer* v. *Wheelwright*, 3 Sandf. Ch. 135.

We are therefore of opinion, that the notes of the husband, held by the plaintiff, were rightfully admitted to proof before the commissioners in insolvency, as a valid legal claim against his estate; and that there was no equity which would require the value of the mortgaged estates to be first deducted.

The agreed statement of facts finds that a part of the estate mortgaged had come to the wife, through mesne conveyances, from her husband. But this can make no difference, if it had lawfully vested in her as her separate estate. If there were any fraud in the transaction, which would make the conveyance inoperative against creditors, that should have been alleged and proved; but none is suggested.

*Judgments for the plaintiffs.*