*INSURANCE COMPANY OF NORTH AMERICA v. I. J. MILLER ET AL.

1. MORTGAGE OF WIFE'S SEPARATE PROPERTY—SURETY OF HUSBAND'S DEBT.

Where it appears from the record that the wife's separate property has been mortgaged to secure the husband's note, it is evidence tending to show that her property sustains the relation of surety to his debt.

2. NOTICE OF MORTGAGE COVERING BOTH HUSBAND'S AND WIFE'S SEPARATE PROPERTY.

Where the mortgage covers both the wife's separate property and property of the husband, the fact that the mortgage secures the husband's note is sufficient to put any one dealing with husband's property covered by said mortgage on inquiry as to the true relation sustained by the wife's property, and to put the burden of proof on the one dealing with such property of the husband to show that the true relation of the wife's property is different from that indicated by the record.

---

*In a *per curiam* opinion, June, 1902, of the Hamilton circuit court, it was held in the above case as follows:

We find from the evidence that the relation of principal and surety existed between Mr. Miller and Mrs. Miller originally when the loan was had from the Cincinnati Savings Society, and are of opinion that the nature of this relation was not changed when the loan from the Insurance Company of North America was substituted.

We do not find that Mrs. Miller consented to the extension of July 1, 1893, and are of opinion that that extension without her consent released her property.

We are further of opinion that the stipulation reserving all rights did not save from the effects of such extension of time.

Petition dismissed.

3. Same—Purchase of Husband's Property—Past Due Indebtedness.

  The foregoing is especially true as to one who purchases such property of the husband, where the only consideration is the husband's past due indebtedness.

4. Estoppel by Passivity—Fraud not Essential.

  While fraud or bad faith is not essential to estoppel, it is a necessary ingredient in misrepresentation by passivity.

5. Same.

  Innocent silence does not estop.

  Hiram D. Peck, for Mrs. Caldwell.

  Charles B. Wilby, for Mrs. Miller.

  Henry P. Kaufman, for the Insurance Company of North America.

JELKE, J.

  We found before June, 1902, that the relation which Mrs. Miller's property bore to Mr. Miller's debt was originally, that of suretyship, and that the insurance company was both constructively put on inquiry by the face of the record, and had actual knowledge from the passage of the checks and the things which were done at the time the loan from the insurance company was substituted for that from the savings society.

  Mrs. Caldwell, in 1896, was chargeable with what the record disclosed, but had no other knowledge of the facts. Mrs. Miller, in 1896, probably did not know the legal effect of what had been done or the true legal status of her property toward Mr. Miller's debt and his creditor, the insurance company.

  It is claimed on behalf of Mrs. Caldwell that, at the time the bargain was made between Mr. Miller and Mr. Caldwell which resulted in the deed to Mrs. Caldwell in which Mrs. Miller joined as grantor, Mrs. Miller, by her conduct, estopped herself from setting up her relation of suretyship as against Mrs. Caldwell.

  We disregard the question of release as against the insurance company, because if Mrs. Caldwell's claim is good it would be good whether or not there was a release by the insurance company. The evidence relied on to establish this estoppel is as follows:

  "Q. What time did she buy it?

  "A. On June 23, 1896.

  "Q. The transaction was through you?

  "A. Yes, sir; it was through me.

  "Q. Have you the deed?

  "A. I have.

  "Q. Refer to that deed and fix the time as near as you can.

  "A. It was after June 23, 1896. Some time after that in the same year.

"Q. Now state what Mrs. Miller said.

"A. I made the remark that I think if I get out of the workhouse, that I could build on that lot; that it would be a nice place to live, but I could not build as long as there was a mortgage on it. The statement of Mrs. Miller was, that they had got the street railroad there then, and she thought it would not be long until they could sell property enough to pay the mortgage off.

"Q. Was the question discussed as to any loss you might suffer by reason of the mortgage?

"A. No, I think it was only discussed that the mortgage was only $10,000 while the property was a great deal more valuable.

"By the Court:

"Q. Who discussed that?

"A. If I recollect, Mrs. Miller made the statement, of course the property was worth a great deal more than the amount of the mortgage.

"Mr. Kaufman:

"Q. Did she speak of the property specifically; did she say what property she referred to?

"A. She spoke of it as our property.

"Q. This property owned by Mr. Miller and Mrs. Miller is one continuous piece?

"A. Yes, sir.

"Q. There is no fence between?

"A. No.

"Q. Mr. Miller's property adjoins Mrs. Miller's property?

"A. I think it runs right nearly to the house.

"Q. And it is used as one piece; there is a grass plot over the two pieces?

"A. Yes, sir." (Record, pp. 24 and 25.)

Counsel for Mrs. Caldwell invoke the benefit of the law as stated in Smiley v. Wright, 2 Ohio 506:

"Widow entitled to dower, present at the sale under order of court, and asserts that the sale may be made free from dower, in consequence of which the price is increased, is thereby barred of dower, although the purchaser was not ignorant of her title."

This is a clear case of estoppel by misleading conduct as to the material fact, page 510:

"Mrs. Smiley was standing in the door, the auctioneer being on the step, when it was struck off. That he heard the auctioneer frequently state that the sale was free of dower, while she was in a situation she must have heard him; and on one occasion replied to him she had no claim to dower."

It was said in Rosenthal v. Mayhugh, 33 Ohio St. 155:

"It is not necessary to constitute such equitable estoppel that a party should design to mislead; it is enough if the act or declaration was calculated to and did in fact mislead another, who acted in good faith and with reasonable diligence."

Counsel for both sides of this issue cite the case of Niemcewicz v. Gahn, 3 Paige 614, affirmed in the court of errors, Gahn v. Neimcewicz, 11 Wend. 312. As between the wife whose separate property was pledged as surety for her husband's debt and his general creditors, Cowen, V. C., below, said, on page 621:

"Since the execution of the mortgage, several judgments have been obtained against Gahn, which operate to encumber his interest *jure uxoris*. The judgment creditors are made parties, and one of the defendant's points is that, in respect to the charge upon her land as surety, she shall be preferred to the judgment creditors; in other words, that she may take the place of the complainant, and have the husband's interest *jure uxoris* applied to satisfy her as surety in the mortgage. This is right, provided it be attainable in this suit. She is entitled to what is called subrogation, *i. e.*, to come round and be herself the mortgagee in place of the complainant; and holding that place, she of course takes preference to the subsequent encumbrancers. This is a familiar and perfectly well settled chancery rule; and Aguilar v. Aguilar, 5 Madd. 414, is this case precisely, only substituting judgment creditor for annuitant."

And on this point the court above, per Mr. Justice Nelson, said on page 317:

"Generally so far as the interest of the mortgagee is concerned in these cases, he knows that the debt was the husband's and that the separate interest of the wife would be in no way responsible for it, until she pledged it as security; at all events, without such knowledge he would not be affected by her character as surety, and with it I see no objection to the operation of the principles applicable to it; and if she is obliged to pay the debt, why should she be postponed to all other creditors? Their debts were not contracted upon the faith of her property, and the law has already vested in the husband a portion of it which it must have deemed a fair equivalent for his obligation to support and maintain her."

Counsel for Mrs. Caldwell cites the same case on the proposition that—

"It is not enough that it be known to him that the property mortgaged is the inheritance of the wife, and that the security was given for money loaned to the husband; for, as the money may have been obtained

Insurance Co. v. Miller.

for the benefit of the wife's estate, or with a view of a gift to the husband, the fact of *suretyship* should be affirmatively established."

And claims that the record is not enough to charge Mrs. Caldwell with knowledge of the suretyship. But what was there said was said as between the wife and the mortgagee, and we have heretofore found that the insurance company knew the relation.

"To make the mortgagee chargeable with the equitable rights of the wife, as surety for her husband, it must appear that he had notice of this relation. Such notice cannot be inferred merely from the fact that the money was paid to the husband, because he may have acted as his wife's agent in the transaction. *But if the mortgage be made to secure a pre-existing debt of the husband, the creditor is affected with notice of the wife's equity as surety, and in his dealings with the husband is bound by this knowledge.*

"A husband and wife joined in executing two mortgages, accompanying his two bonds; all being given for the same debt. This was in part a pre-existing debt of the husband and in part money advanced to him at the time. One mortgage was on his own lands, the other was on the wife's inheritance. *Held:* (a) That the husband's lands were the primary fund for the payment of the mortgages, and the wife's became the secondary or auxiliary fund for that purpose. She became the surety for her husband in respect of the latter. (b) That the suretyship is made out in such a case, by showing that it was the husband's debt, or that he received the money advanced. If the money were used for the benefit of the wife or her property, or any circumstance exist which will defeat her claim to be regarded as a surety, it must be proved by the party alleging such fact." Loomer v. Wheelwright, 3 Sandf. Ch. 135.

An examination of the records by Mrs. Caldwell would have disclosed that the mortgage given to the insurance company was to secure a pre-existing debt of Mr. Miller, *i. e.,* to the saving society, but only a debt of the same character. The record discloses that the $5,000, the consideration named in the deed, consisted of old debts of Mr. Miller to Mr. and Mrs. Caldwell with accrued interest. The Caldwells gave up choses in action for the property; they surrendered no security. The change in Mr. Miller's responsibility is an incident to a lapse of time which was in no way contracted for.

In the case of Lewis v. Anderson, 20 Ohio St. 281, 286, the court quotes the following:

" 'As a general rule,' says the chancellor in Padgett v. Lawrence, 10 Paige 180, 'a purchaser of the legal title who receives a conveyance

merely in consideration of a prior indebtedness, is not entitled to protection, because he has lost nothing by the purchase. But the relinquishment of a valid security, which he before held for the debt, and which cannot be revived so as to place him in the same situation substantially as to security as he was in prior to the purchase, may of itself be sufficient to entitle him to protection as a *bona fide* purchaser.' Willard Eq. Jurisp. 256."

We see no reason why Mrs. Caldwell should stand in any better relation toward Mrs. Miller's property than either Mr. Miller or the insurance company, unless Mrs. Miller has made it so either by deed or estoppel *in pais.*

Mrs. Miller joined in the granting clause and released dower in the testatum clause of the deed to Mrs. Caldwell of this piece of Mr. Miller's property. Now it is claimed that Mrs. Miller not only conveyed her dower, but whatever interests she may have had in this piece of property because her own property was surety for her husband's debt. It is difficult to see how Mrs. Caldwell can say this when she especially claims that as against her Mrs. Miller's property was not surety for Mr. Miller's debt.

Either Mrs. Miller's property was surety or it was not. If it were not, then this particular interest did not exist and could not have been conveyed. If it were, then the interest growing out of this relation Mrs. Miller had in Mr. Miller's property vanished long prior to the deed in 1896, when the release was worked in 1893, and this was so whether Mrs. Miller and Mrs. Caldwell or either of them knew it or not.

Further, whatever interest Mrs. Miller might at any time have had in Mr. Miller's land, growing out of this transaction, in addition to her dower, would have its origin in principles of subrogation, and it is extremely doubtful whether it is such a real interest in land as would pass by deed.

And again, there is no equity in Mrs. Caldwell complaining because she did not get what under the evidence she could not have expected to get.

We conclude that Mrs. Caldwell took no superior rights on this issue by her deed.

We find as a matter of fact that in the conversation detailed by Mr. Caldwell in the testimony above set out, nobody present had this matter of suretyship in mind. That legal concept had its origin only after Mrs. Miller had consulted counsel. It was nevertheless imbedded in the facts and the law. That whole talk was but the expression of sanguine hope borne to all present by the accomplishment of things long planned and

struggled for. Nobody then supposed that recourse would be necessary even to Mrs. Miller's property. To say that the idea of suretyship was present would be fatal to Mrs. Caldwell's case. On this subject Mrs. Miller's conduct is to be characterized as "innocent silence."

Herein is the difference between the case at bar and the case of Rosenthal v. Mayhugh, 33 Ohio St. 155. On this point the discussion of "Misrepresentation by Passive Assistance" by John S. Ewart in his work on Estoppel, is so able and apt that we would spoil it to talk about it, and as it is too long to copy into this opinion we adopt it by reference, beginning on page eighty-eight to the bottom of page ninety-two. Likewise his discussion of the case of Pickard v. Sears, 6 Ad. & Ell. 469, cited and relied on by Mrs. Caldwell's counsel, on pages ninety-two and ninety-three of the same work, showing how the principle of that case is not exactly applicable to cases like the one at bar.

We, therefore, see no reason why we should vary as to Mrs. Caldwell's property, the conclusion we came to, as against the insurance company.

Decree accordingly.